# Richmond

## Wesley Watkins

### v.

## Halco Engineering, Inc., et al.

March 11, 1983.

Record No. 820546.

Present: Carrico, C.J., Cochran, Poff, Compton, Thompson,*
Stephenson and Russell, JJ.

---

* Justice Thompson participated in the hearing and decision of this case prior to the effective date of his retirement on March 2, 1983.

*J. Hunt Brasfield (Ashcraft & Gerel,* on brief), for appellant.
*Mary Louise Kramer (Roger L. Williams; Sands, Anderson, Marks & Miller,* on brief), for appellees.

COMPTON, J., delivered the opinion of the Court.

In this workmen's compensation case, the sole issue is whether the Industrial Commission properly refused to order the employer to pay for psychiatric services rendered the claimant following a back injury.

Appellant Wesley Watkins sustained injuries to his lower back in an industrial accident in January of 1979. He fell while working in Arlington as a welder for appellee Halco Engineering, Inc. The injury was accepted as compensable by the employer and its insurer, appellee Aetna Insurance Company (collectively, the employer). Pursuant to awards of the Commission, the claimant subsequently received compensation for periods of temporary total disability caused by his injury, diagnosed as a back sprain.

Because of persistent back pain, Watkins was unable to perform the duties of a welder after the accident. In about January of 1980, the claimant, age 32, enrolled in Northern Virginia Com-

munity College, with the encouragement of his physician, "to carry out a long-standing desire to achieve a college degree" and to further his education so that he could qualify for less strenuous employment. At college, however, he was "unable to sustain interest and attention, sometimes because of back pain . . . at other times, because he [felt] depressed or hopeless." His grades were poor, he dropped courses, and he felt "increasingly like a failure."

Due to these school difficulties, claimant's treating orthopedic surgeon referred him in June of 1981 to Dr. William F. Cavender, an Alexandria psychiatrist. Upon examination, Cavender diagnosed claimant's condition as "Adjustment Disorder with Academic Inhibition . . . manifested by depression and inability to study." Cavender reported that Watkins suffered stress caused by "ongoing pain and loss of work ability resulting from the accident."

During the October 1981 hearing before a deputy commissioner on claimant's demand that the employer pay for Cavender's services, the psychiatrist testified about the cause of Watkins' condition as follows:

"Well, he was working as a welder making a nice income, able to support himself and then subsequent to the injury he went on disability with a significant change in his income and [was] advised not to return to welding. He was then faced with another way of making a living. He wanted to do that in the business world, and had to go back to school at the college level to do that and encountered significant difficulty in concentrating and studying and maintaining his self-esteem. So, he went from a situation in which he was reasonably comfortable in making a good income to a situation in which he had a much lesser income and which he had some pain and which he was having some considerable difficulty in completing the . . . school work that would enable him to have another occupation."

Cavender then instituted a course of treatment, which he described as follows:

"I've seen him approximately twice a week . . . after the initial period in which I took a thorough history. I [began] to teach him a relaxation technique and to use some imagery. The relaxation technique being for the purpose of allowing

him to experience in his imagination and in his memory the things that impede his studying, . . . to allow him to experience that in a relaxed state and to envision himself successfully studying and opening his mind and letting the material in, and allowing that material to come forth at examination time and that's sort of a modified technique of reciprocal inhibition. That's a behavioral technique."

At the time of the hearing, Cavender's bill amounted to $1600, based on a rate of $65 per 50-minute session of "individual psychotherapy."

In a November 1981 opinion, the deputy commissioner concluded that the "adjustment disorder with academic inhibition" suffered by Watkins was not causally related to the claimant's accident. Noting Cavender testified that his principal goal was to assist Watkins in satisfactorily completing college and that claimant's condition was one experienced by the general population, the deputy found that "the psychiatric treatment and psychotherapy" provided by Cavender was "neither reasonable nor necessary medical treatment related to claimant's industrial accident but merely treatment for an ordinary disease of life." Upon review, the full Commission unanimously agreed with the deputy's decision that the employer was not liable for the cost of any services rendered by Cavender.

On appeal, the claimant contends the Commission erred, as a matter of law, in concluding that the psychiatric treatment was not causally connected to Watkins' work-related injury. He contends such treatment "was reasonable and necessary in order to facilitate claimant's readjustment to his injury."*  Watkins attacks the Commission's conclusion that the treatment was for "an ordinary disease of life." He says this finding is "inherently inconsistent" because this is the case of an accidental injury, not an industrial disease. Watkins contends that the "conclusion that the treatment was for an ordinary disease of life might constitute a defense if [he] had claimed he was suffering from an occupational disease." But, he argues, it is undisputed he suffered an accidental injury, and "the *proper* question is the existence of a causal relationship between the work injury and the need for psychiatric

---

* Claimant advanced a waiver theory of error on brief but did not argue it orally. Hence, we will not notice that contention further.

treatment." He urges the uncontradicted medical evidence establishes such causal connection. We disagree.

While there is evidence in the record to support a finding of causal relation between the accidental injury and the psychiatric treatment, we cannot say that the Commission's decision to the contrary is without credible evidence to support it. A determination by the Commission upon conflicting facts as to causal relationship is conclusive and binding on appeal, absent fraud, when such finding is supported by competent, credible evidence. *C.D.S. Services* v. *Petrock*, 218 Va. 1064, 1070, 243 S.E.2d 236, 240 (1978). Likewise, the Commission's conclusions upon conflicting inferences, legitimately drawn from proven facts, are equally binding on appeal.

Here, the broad issue was whether the employer was required to provide these psychiatric services pursuant to the mandate of Code § 65.1-88. As pertinent here, the statute provides that "[a]s long as necessary after an accident the employer shall furnish or cause to be furnished, free of charge to the injured employee, a physician . . . *and such other necessary medical attention*" (emphasis added). In construing the statutory language, we recently have said the claimant has the burden to prove that the medical attention, for which payment is claimed under § 65.1-88, was causally related to the industrial accident. *Insurance Management Corp.* v. *Daniels*, 222 Va. 434, 438-39, 281 S.E.2d 847, 849 (1981). We conclude the Commission was justified, under this evidence, in deciding Watkins had failed to sustain that burden.

The record shows that Watkins previously had experienced difficulty with school work at the college level. After completion of high school in 1967, he attended college on a football scholarship, but was "not doing much studying." He left the school after one year because he did not want "to be there from the start." After the 1979 industrial accident, his aversion to school work surfaced again. The referral from the orthopedist to the psychiatrist was solely "because of difficulty in completing college work." The treatment of the psychiatrist was programmed "[t]o help him complete school so he can achieve a new occupation." Watkins returned to the discipline of college studies after an absence of over 10 years and he had difficulty adjusting to the regimen of academia. Given claimant's previous lack of scholastic achievement, the Commission properly could conclude, based on inferences legitimately drawn from these facts, that his present

problem of adjustment was not caused by the accident; rather it was brought on by factors unrelated to the accident, similar to those experienced by a large segment of the general population when an individual is called upon to adapt to a new situation or routine.

For these reasons, we hold the Commission correctly denied the claim for payment of psychiatric services. Consequently, the order appealed from will be

*Affirmed.*