COURT OF APPEALS OF VIRGINIA

Present: Judges Alston, McCullough and Senior Judge Clements
Argued at Chesapeake, Virginia

UNPUBLISHED

ANGIE BROWN

MEMORANDUM OPINION[*] BY
v.        Record No. 0815-13-1        JUDGE ROSSIE D. ALSTON, JR.
NOVEMBER 19, 2013

KENTUCKY FRIED CHICKEN AND
 INDEMNITY INSURANCE COMPANY
 OF NORTH AMERICA

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Gregory E. Camden (Montagna, Klein & Camden LLP, on briefs),
for appellant.

C. Ervin Reid (Goodman, Allen & Filetti, on brief), for appellees.

Angie Brown (claimant) appeals from an order of the Workers' Compensation

Commission (the commission) denying her claims for benefits. On appeal, claimant contends:

1) the commission erred in failing to recognize claimant's head as a body part injured during her

work accident; 2) the commission erred in failing to find claimant's August 2011 hospitalization

was related to her work injury; and 3) the commission erred in terminating temporary partial

disability benefits. Finding no error, we affirm the commission.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.  Background[1]

On appeal from the commission, we view the evidence in the light most favorable to employer, the party prevailing below. See Starbucks Coffee Co. v. Shy, 61 Va. App. 229, 233, 734 S.E.2d 683, 685 (2012).

A.  Claimant's Injury and Initial Award Order

So viewed, the evidence indicated that claimant was injured on November 20, 2007, when she was struck by a motor vehicle while working for Kentucky Fried Chicken (employer). Claimant filed a claim for benefits shortly thereafter, alleging injuries to her left foot, left knee, head, and left side.  Thereafter, the parties entered into an agreement to pay benefits that identified the nature of claimant's injury as "left knee sprain, left ankle sprain, posttraumatic headaches, [and] bruising on the left side."  The commission approved the parties' agreement and entered an order awarding claimant temporary total disability benefits on March 14, 2008. The order did not describe the nature of claimant's injury.

B.  Medical Treatment

Claimant began treating with Dr. Donald LaMarche in April of 2008, after suffering what claimant "thought maybe . . . a seizure."  Dr. LaMarche diagnosed claimant with a convulsive disorder.  He stated that the cause of claimant's seizures was not clear, although he noted that one of claimant's medications "ha[d] been associated with seizures."  Over the following years, Dr. LaMarche continued to treat claimant for her convulsive disorder.  Dr. LaMarche also treated claimant for headaches, which eventually became claimant's primary complaint.  Dr. LaMarche opined that claimant's headaches were likely secondary to stress and anxiety.

---

[1] As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

In addition to her treatment with Dr. LaMarche, claimant also met with Dr. Alan Towne for an independent medical examination in May 2009. Dr. Towne diagnosed claimant as having a history of seizures predating her November 2007 work accident. However, he also noted that claimant's seizures following her work accident "were significantly different from her prior episodes," and included episodes of loss of consciousness.

## C. Claimant's Return to Work and Change in Condition

On September 7, 2010, claimant began working as a school bus driver. Shortly thereafter, employer filed an application for a hearing, requesting that the commission terminate claimant's temporary total disability benefits based on her return to work. Claimant filed an application requesting an award of temporary partial disability benefits. The parties subsequently executed a number of agreement forms regarding claimant's request for benefits. Those forms described the nature of claimant's work injury as including an injury to her head.

On May 18, 2011, the commission entered an order awarding claimant temporary partial disability benefits. The award also modified the nature of claimant's injury to cover the following body parts: "left knee sprain, left ankle sprain, posttraumatic headaches, [and] bruising of the left side." Neither party appealed this order.

## D. August Hospitalization

On August 9, 2011, claimant was admitted to an emergency room under a stroke protocol after exhibiting changes in her mental status, slurred speech, and left-sided weakness. Claimant was discharged from the hospital on August 12, 2011. Her discharge summary notes reflect that the doctors ruled out a stroke based on the results of MRI and CT scans and "suspect[ed] recurrent [seizure] activity based" on two seizure events that occurred during her hospitalization. Nevertheless, upon discharge, the doctors' impression remained "slurred speech and [left] sided weakness."

In the months following her hospitalization, claimant continued her treatment with Dr. LaMarche. On August 17, 2011, Dr. LaMarche examined claimant and noted that he was "not sure why" claimant experienced her recent symptoms, which included loss of consciousness, shaking, left hemiparesis (i.e., weakness on the left side of the body), and left hemisensory loss (i.e., diminished sensation on the left side of the body). Dr. LaMarche expressed similar uncertainty after examining claimant in September, noting that claimant's left hemiparesis was of unclear etiology. Dr. LaMarche recommended that claimant undergo a "finer cut" MRI and electroencephalogram (EEG) test in order to further assess her condition.

On November 11, 2011, Dr. LaMarche wrote a letter to the commission requesting authorization to perform an additional MRI and EEG scan. Dr. LaMarche stated that "he saw [claimant] on August 17, 2011, for a recent seizure that resulted in a visit to [an] . . . Emergency Room. [Claimant], as a result of th[at] . . . event . . . suffered from left-sided weakness of her body and slurred speech." One week later, Dr. LaMarche prepared a letter that expressed his belief, within a reasonable degree of medical probability,[2] that claimant's alleged convulsive activity was related to her original work injury. The letter also expressed Dr. LaMarche's view that claimant's hemiparesis *may be* related to her work injury, though he could not come to this conclusion within a reasonable degree of medical probability without additional testing.

E. Deputy Commissioner Hearing

On November 21, 2011, the deputy commissioner held a hearing to address claimant's claims for benefits, which requested permanent partial disability, temporary partial disability benefits, temporary total disability benefits, and penalties for employer's failure to pay benefits

---

[2] For purposes of this opinion, medical probability and medical certainty are used interchangeably to reflect the findings of Dr. LaMarche and Dr. Towne.

pursuant to the May 18, 2011 award.[3] The claims did not include a request to add claimant's head injury as a body part injured in her compensable accident.

After the hearing, the deputy commissioner entered a partial award order. The order affirmed that claimant was under an open award for temporary partial disability benefits pursuant to the commission's May 18, 2011 award order. The order also scheduled an independent medical examination, after which the deputy commissioner would determine whether claimant's August hospitalization was related to her work injury and whether she was entitled to temporary total disability benefits beginning August 9, 2011.

On January 17, 2012, Dr. Towne performed an independent medical examination of claimant. He diagnosed claimant with seizures, left hemiparesis with left lower extremity weakness, and left-sided sensory deficits. Pertaining to the diagnoses, Dr. Towne concluded that claimant's seizures, left lower extremity weakness, and pain diagnoses were causally related to her work accident. He was, however, unable to offer an opinion with regard to whether claimant's August hospitalization was casually related to her work accident.

Following the completion of Dr. Towne's independent medical exam, the deputy commissioner entered an order denying claimant's requests for medical benefits related to her August hospitalization and temporary total disability benefits. In addition, the deputy commissioner terminated claimant's award for temporary partial disability benefits, because "there [was] no evidence that claimant engaged in any kind of marketing [following] her August 9, 2011 hospitalization."

Claimant promptly filed a motion for reconsideration that, among other things, requested that the deputy commissioner amend the award order to include claimant's head as an injured

---

[3] During the hearing before the deputy commissioner, the parties stipulated that the commission's May 18, 2011 award was in full force and effect as of the time of the hearing. That order described the nature of claimant's injury as "left knee sprain, left ankle sprain, posttraumatic headaches, [and] bruising on the left side."

body part consistent with the parties' "[p]revious agreement forms and awards." The deputy commissioner denied claimant's motion for reconsideration.

F. Full Commission Hearing

On review, the commission affirmed the deputy commissioner's order. The commission concluded that claimant failed to carry her burden of proof that her August hospitalization was causally related to her compensable injury. While Dr. LaMarche opined that claimant's left-sided weakness required claimant's hospitalization and "may be related" to her work accident, he could not maintain this opinion within a reasonable degree of medical certainty. Thus, the evidence showed only a possibility of causation. Similarly, the commission affirmed the deputy commissioner's decision to terminate claimant's temporary partial disability benefits, concluding that while claimant was partially disabled following her hospitalization, she had neither worked nor marketed her remaining work capacity during that time.

Finally, the commission refused to consider the issue of claimant's head injury on review. The commission found that whether claimant suffered a head injury as a result of her work accident was not raised in claimant's claims for benefits and, accordingly, was not before the deputy commissioner. Rather, according to the commission, claimant first raised the issue in her request for reconsideration of the deputy commissioner's award order.

Commissioner Marshall dissented in part from the commission's opinion. Commissioner Marshall concluded that the commission's prior awards "already cover[ed] [claimant's] head injury" and that claimant met her burden of proof regarding her August hospitalization. Commissioner Marshall concurred with the commission's finding that the deputy commissioner property terminated claimant's temporary partial disability award.

Claimant filed a request for reconsideration with the commission, which was denied. This appeal followed.

- 6 -

## II. Analysis

### A. Standard of Review

"Decisions of the commission as to questions of fact, if supported by credible evidence, are conclusive and binding on this Court." Manassas Ice & Fire Co. v. Farrar, 13 Va. App. 227, 229, 409 S.E.2d 824, 826 (1991). "However, the commission's legal determinations are not binding on appeal and will be reviewed *de novo*." Wainwright v. Newport News Shipbuilding & Dry Dock Co., 50 Va. App. 421, 430, 650 S.E.2d 566, 571 (2007).

### B. Claimant's Head Injury

On review of the deputy commissioner's award, the commission found that claimant's head injury "was not before the [d]eputy [c]ommissioner" and refused to consider the issue "for the first time [on review]." Claimant assigns error to the commission's failure to recognize her head as a body part injured during her work accident. Finding no error, we affirm the commission's opinion.

Upon our review of the record, we find that claimant did not raise the issue of her head injury at the hearing before the deputy commissioner. The only issues that were before the deputy commissioner were those addressed in claimant's claims for benefits, which requested additional disability benefits and penalties for employer's failure to pay benefits under the commission's May 18, 2011 award order. Moreover, as the parties stipulated, the commission's May 18, 2011 award order was in effect at the time of the hearing before the deputy commissioner. That order did not include claimant's head injury, listing instead "posttraumatic headaches." Claimant neither appealed that order nor requested that the deputy commissioner amend the award order to include her head as an injured body part. Rather, claimant first requested to add her head injury as an injured body part by filing a request for reconsideration after the deputy commissioner entered the award order.

- 7 -

Relying on Phillip Morris USA, Inc. v. Mease, 62 Va. App. 190, 745 S.E.2d 155 (2013), claimant contends that the evidence in the record, including her initial claim for benefits, provided employer with sufficient notice of her head injury. Moreover, she asserts that employer was "aware of [her] head injury" and demonstrated through its "course of conduct" that claimant's head injury was encompassed in the commission's May 18, 2011 award order. Accordingly, she contends that she "alleged an injury to her head" at all times.

We find claimant's reliance on Phillip Morris misplaced. In Phillip Morris, we addressed whether the claimant's request for physical therapy was timely filed. Id. at 197-98, 745 S.E.2d at 158. In doing so, we considered the employer's conduct and knowledge of the claimant's injury in order to ascertain the scope of the parties' agreement to pay benefits as it related to the claimant's request for physical therapy. Id. at 199-200, 745 S.E.2d at 159-60. This Court's conclusion in Phillip Morris that the "employer had sufficient notice" of the claimant's injury, therefore, addressed whether the claimant met his obligation to assert his claim against the employer within the two-year statute of limitations, not whether the issue was properly before the deputy commissioner at that particular hearing. Id. at 200, 745 S.E.2d at 159. Nothing in our analysis spoke to the issue raised here: whether the commission erred in refusing to consider an issue for the first time on review. Because the issue of claimant's head injury was not before the deputy commissioner, we find that the commission did not err by refusing to consider this issue on review for the first time and, therefore, we affirm the commission.[4]

---

[4] We make no finding regarding claimant's head injury or the scope of the parties' prior award orders, viewing those issues as potentially the subject of future consideration by the commission. We do note, however, that employer conceded during oral argument that claimant's request to add her head as a compensable injury has not been foreclosed and is the subject of future resolution.

C.  Claimant's August Hospitalization

Claimant next assigns error to the commission's finding that she failed to prove that her August hospitalization was causally related to her work injury.  She contends that she was hospitalized because of her seizure activity, which Dr. LaMarche "related to her original [work] injury."  Accordingly, claimant argues that the evidence presented to the commission established that her hospitalization was causally related to her work injury.  We disagree.

In order to recover the costs of medical treatment under the Workers' Compensation Act, an injured employee must show that her treatment was causally related to a compensable work injury.  See Watkins v. Halco Eng'g Inc., 225 Va. 97, 101, 300 S.E.2d 761, 763 (1983).  Here, the commission concluded that claimant failed to present sufficient evidence to prove that her August hospitalization was casually related to her work injury.  Unless we can say as a matter of law that the evidence submitted by claimant sustained her burden of proof, the commission's determination is binding upon this Court.  Tomko v. Michael's Plastering Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970).

Claimant argued before the commission, as she does now, "that she sought treatment at the hospital [in August 2011] for her seizures."  However, the commission attributed claimant's hospitalization "[to her] slurred speech and left-sided body weakness," not her seizure disorder.  In addition, the commission concluded that the evidence established only a possibility, not a probability, that claimant's hospitalization was causally related to her work accident.  The commission's findings are not without support in the record.

Claimant was admitted to the hospital under a stroke protocol on August 9, 2011, after presenting to the emergency room with slurred speech and left-sided weakness.  The doctors initially suspected that claimant suffered a stroke, but that diagnosis was ruled out after the doctors reviewed claimant's MRI and CT scans.  Based on the results of those tests and seizure

activity claimant exhibited during her hospitalization, the doctors concluded that claimant's condition was "looking more like [a] s[eizure] d[isorder]." Notwithstanding that conclusion, the doctors' main impression upon claimant's discharge remained slurred speech and left-sided weakness.

The medical evidence relating claimant's slurred speech and left-sided weakness to her work injury is similarly conflicting. Following her hospitalization, claimant continued treating with Dr. LaMarche, who sent a letter to the commission on November 10, 2011, which related claimant's hospitalization to her work injury. Dr. LaMarche stated that "[he] saw [claimant] on [August 17, 2011] for a recent seizure that resulted in a visit to the [hospital] . . . . [A]s a result of this recent event, [claimant] has suffered from left-sided weakness of her body and slurred speech." However, Dr. LaMarche's treatment notes from claimant's August 17, 2011 examination state that Dr. LaMarche was "not sure why [claimant]" suffered from left-sided weakness. Dr. LaMarche also expressed uncertainty regarding claimant's condition after he sent his November 10, 2011 letter to the commission. In particular, Dr. LaMarche noted that claimant "is . . . suffering from [left-sided weakness] which may be related to the [work] injury," but he could not say "within a reasonable degree of medical certainty." See Clinchfield Coal Co. v. Brown, 229 Va. 249, 251, 329 S.E.2d 15, 16 (1985) ("A mere opinion that the condition *may* have resulted from the accident is not sufficient." (emphasis added)).

In addition, Dr. Towne expressed uncertainty about claimant's condition following his independent medical examination. While Dr. Towne diagnosed claimant with left hemiparesis and left upper extremity sensory defects, he did not attribute those diagnoses to claimant's work injury. Moreover, he stated that he could not conclude within a reasonable degree of medical certainty that claimant's August hospitalization was causally related to her work injury.

As the Supreme Court of Virginia has previously held, the commission resolves conflicts in the medical evidence, and its decisions when based upon credible evidence are binding on the Court. See Celanese Fibers Co. v. Johnson, 229 Va. 117, 120-21, 326 S.E.2d 687, 690 (1985). The commission evaluated the conflicting medical evidence and concluded that claimant failed to prove that her August hospitalization was causally related to her work injury. That finding is not without support in the record. See Georgia-Pacific Corp. v. Robinson, 32 Va. App. 1, 5, 526 S.E.2d 267, 269 (2000) ("'[T]he commission's findings are binding *even* if the weight of the evidence is contrary to those findings.'" (quoting Kane Plumbing v. Small, 7 Va. App. 132, 136, 371 S.E.2d 828, 831 (1988))). Accordingly, we affirm the commission's decision.

D. Temporary Partial Disability Benefits

Finally, claimant asserts that the commission erred in terminating her award for temporary partial disability benefits because she failed to market her remaining work capacity. Claimant contends that an injured worker "who is released to light duty work while receiving benefits under an outstanding award has no obligation to market her residual capacity." Finding no error in the commission's opinion, we affirm.

Ordinarily, a claimant under an open award is not required to market her remaining work capacity. See generally Linda D. Slough, Virginia Practice: Workers' Compensation § 29:6 (2012-13 ed.) ("If an injured employee is not under an open award and the employee receives a light duty release to return to work, the employee has a duty to market his residual capacity."). However, claimant filed a claim for a change in condition requesting temporary total disability benefits. As the party alleging a change in condition, claimant bore the burden to prove the allegation by a preponderance of the evidence, which included an obligation for her to market her remaining work capacity. See Pilot Frieght Carriers, Inc. v. Reeves, 1 Va. App. 435, 439, 399 S.E.2d 570, 572 (1986); see also Lawrence J. Pascal, Virginia Workers' Compensation

- 11 -

§ 6.02 (4th ed. 2011) ("[A]n injured worker who is seeking an initial award of benefits or a change-in-condition and has been released to light duty work has the burden of proving marketing of remaining physical capacity." (citing WMATA v. Harrison, 228 Va. 598, 324 S.E.2d 654 (1985))); Martin v. Univ. of Va. Med. Cntr., No. 200-60-98 (Va. Workers' Comp. Comm'n May 30, 2006) (holding that the claimant, who was under an open award for temporary partial disability benefits, was required to prove adequate marketing when she filed a change-in-condition application seeking temporary total disability benefits).[5] Because claimant did not present evidence that she marketed her remaining work capacity, we hold that the commission did not err in finding that she was not entitled to disability benefits and terminating her award for temporary partial disability benefits.

III.  Conclusion

For these reasons, we find that the commission did not err in refusing to consider claimant's head injury on review, finding that claimant did not adequately prove that her hospitalization was causally related to her work injury, and terminating claimant's award for temporary partial disability benefits.  The decision of the commission is therefore affirmed.

Affirmed.

---

[5] While decisions of the commission are not binding on this Court, they may be persuasive in some cases.  See Pruden v. Plasser Am. Corp., 45 Va. App. 566, 580, 612 S.E.2d 738, 745 (2005).