COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Chief Judge Huff,[*] Judges Chafin and Decker
Argued at Richmond, Virginia


FULL CIRCLE CONCEPTS II, LLC

MEMORANDUM OPINION[**] BY
v.      Record No. 1093-14-1      CHIEF JUDGE GLEN A. HUFF
FEBRUARY 3, 2015

LAMONT CHERRY AND
 POTOMAC INSURANCE COMPANY OF ILLINOIS (SUA INSURANCE COMPANY)


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

> Norman A. Thomas (James T. Lang; Alysha N. Allen; Norman A.
> Thomas, PLLC; Pender & Coward, P.C., on briefs), for appellant.
>
> Brian Casey (Donna White Kearney; Taylor Walker, P.C., on
> brief), for appellee Potomac Insurance Company of Illinois (SUA
> Insurance Company).
>
> No brief or argument for appellee Lamont Cherry.

Full Circle Concepts II, LLC ("Full Circle") appeals a decision of the Virginia Workers'

Compensation Commission ("commission") dismissing Specialty Underwriters' Alliance

Insurance Company ("SUA")[1] as a party defendant in Lamont Cherry's ("claimant") action

against Full Circle under the Workers' Compensation Act. On appeal, Full Circle presents three

assignments of error:

> 1. The commission erred in holding that SUA is not equitably
>    estopped from denying coverage.
>
> 2. The commission erred in holding that SUA complied with the
>    mandatory notice provisions of . . . Code § 65.2-804(B), and

---

[*] On January 1, 2015, Judge Huff succeeded Judge Felton as chief judge

[**] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Potomac Insurance Company of Illinois was a predecessor of SUA.

that SUA need not prove [Full Circle's] actual receipt of notice of cancellation.

3. The commission erred in holding that SUA lawfully cancelled [Full Circle's] workers' compensation insurance coverage, and that it was not liable to cover [Full Circle's] loss occurrence of August 6, 2009.

For the following reasons, this Court affirms the rulings of the commission.

## I. BACKGROUND

On appeals from the commission, "we review the evidence in the light most favorable to the prevailing party." R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). If supported by credible evidence, the commission's factual findings are "binding on appeal," Tomes v. James City Fire, 39 Va. App. 424, 430, 573 S.E.2d 312, 315 (2002), "even though there is evidence in the record to support a contrary finding," Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986). When "determining whether credible evidence exists," we cannot "retry the facts, reweigh the preponderance of the evidence, or make [our] own determination of the credibility of the witnesses." Wagner Enters. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991). In addition, the commission's "conclusions upon conflicting inferences, legitimately drawn from proven facts, are equally binding on appeal." Watkins v. Halco Eng'g, Inc., 225 Va. 97, 101, 300 S.E.2d 761, 763 (1983). So viewed, the evidence is as follows.

Full Circle is a telecommunications firm located in Virginia Beach that primarily installs and repairs underground communication cables. In March 2009, Full Circle, through its part-owner and Office Manager, Barbara Hudson ("Hudson"), asked Jo Ann Emmons ("Emmons") to assist in obtaining a workers' compensation insurance policy.[2] Emmons is

---

[2] Full Circle previously used Emmons to obtain a variety of insurance needs, including liability insurance and auto insurance.

licensed by the Virginia Bureau of Insurance and thereby entitled to sell, solicit, and negotiate contracts of insurance in the Commonwealth.

Emmons contacted Appalachian Underwriters Incorporated ("AUI")[3] to obtain quotes from multiple insurance companies on Full Circle's behalf. Based on an annual premium quote of $48,191, Full Circle selected a workers' compensation insurance plan from SUA and opted for a payment plan, with payments to be made to AUI. Emmons told Full Circle to issue a check in the amount of $6,848.70 to serve as the down payment for their insurance policy. Full Circle submitted this check to Emmons on March 24, 2009, who then faxed an advance copy to AUI.

Under the terms of the insurance contract, AUI was to receive the down payment check by April 6, 2009, but the check did not arrive until April 9, 2009. On the day that the check arrived, AUI called Emmons to advise that the down payment was $376.95 short and that the difference must be paid immediately. On April 21, 2009, Emmons called Hudson to inform her that the down payment check was insufficient. Consequently, Hudson asked Emmons to fax the information to Full Circle regarding the shortage and methods by which the shortage could be paid. Emmons testified that she sent a fax to Full Circle that same day, but Hudson testified that she never received the fax, and therefore, never paid the $376.95 still owed to AUI for the down payment. Additionally, although Hudson understood that additional premium payments were required, she testified that Full Circle paid nothing more towards its insurance policy following its initial down payment because it never received invoicing from AUI.[4]

---

[3] AUI is a managing general agent for SUA, and thereby has the full authority to "solicit, market, quote, issue, bind, endorse, cancel, and completely service all [SUA's] business on [SUA's] behalf."

[4] Specifically, the balance of the policy premium after the down payment was to be paid in installments, with the first installment payment due on April 26, 2009.

On April 27, AUI faxed a Notice of Cancellation to Emmons regarding Full Circle's insurance policy for failing to make an adequate down payment. The notice provided that the cancellation date was set for May 18, 2009. Upon receiving the fax from AUI, Emmons forwarded this fax to Full Circle along with another copy of her April 21 memo regarding the $376.95 down payment shortage. Additionally, AUI mailed a copy of this notice to Full Circle via U.S. Postal Service with proof of mailing. Cheryl Lundquist ("Lundquist"), a manager with AUI, testified extensively regarding AUI's mailing procedure for cancellation notices. Specifically, Lundquist testified that an AUI employee completed a U.S. Postal Form 3877, which contains the recipients of cancellation notices and their respective addresses.[5] The form and corresponding cancellation notices were then taken to the Post Office where a postal employee verified that there was a piece of correspondence for each entry on the form and that the address for each entry on the form matched the address of the correspondence. After finding that the pieces of correspondence, the listing of recipients, and the addresses of the recipients matched, the postal employee accepted the correspondence and postmarked the form on April 27, 2009. The cancellation notice addressed to Full Circle was not returned to AUI as undelivered. While Hudson acknowledges this notice of cancellation from AUI was correctly addressed to Full Circle's physical address, she denied ever receiving it.

On May 27, 2009, Debbie Wine ("Wine"), Full Circle's Office Supervisor, emailed Emmons because they had yet to "receive[] any documentation for [the] worker's [sic] comp policy." Emmons replied by e-mail the following day, stating that the policy was in force for the "period 3/26/09 thru 3/26/10." Further, Emmons offered to fax Full Circle a Certificate of Insurance if needed for Full Circle's business license.

---

[5] Lundquist testified that the cancellation notices are mailed in window envelopes so that the address seen on the cancellation notice is the address "on" the envelope.

On June 11, 2009, the commission received notice of Full Circle's insurance cancellation from AUI and, pursuant to Code § 65.2-804(B), determined June 20, 2009 to be the effective cancellation date. On June 17, the commission issued a "Notice of Cancellation/Request for Required Report" to Full Circle advising that its insurance was cancelled effective June 20, 2009, and requiring Full Circle to respond to the notice within 10 days. On June 27, having received no response from Full Circle, the commission issued a second "Notification/Order to File Required Report." Neither notice was returned to the commission as undeliverable. While Hudson acknowledges that both notices from the commission were properly addressed to Full Circle, she denies ever having received the first notice, but admits receiving the second notice no later than July 1, 2009.

On July 2, 2009, Hudson emailed Emmons requesting an explanation for the cancellation notice. Emmons informed Hudson that AUI had cancelled the policy for premium nonpayment. Emmons subsequently told Hudson that she would respond to the commission on Full Circle's behalf and figure out "what to do" to get Full Circle's insurance back in place.

Notwithstanding the notice of cancellation, on July 6, 2009, Full Circle received a "claims kit," also referred to as the "Dear Insured" letter, from AUI that was designed to assist Full Circle with reporting a workplace injury. AUI does not know how, why, or from where this claim's kit was generated, nor does it have any record of it being sent. Indeed, AUI called the "claims kit" an inexplicable "mistake." On July 15, 2009, Hudson emailed Emmons because she had yet to hear back regarding "what to do" to ensure the policy's continued coverage. In the email, Hudson asserted that the receipt of the "claims kit" "makes me think we are covered." Emmons did not respond to this email.

On August 5, 2009, Hudson emailed Emmons asking whether its workers' compensation insurance policy's coverage extended to Full Circle employees while working in West Virginia.

- 5 -

Emmons responded on the morning of August 6, 2009 via an email in which she stated that she would call Hudson to discuss her inquiry. That afternoon, Cherry, a Full Circle employee, suffered compensable work injuries while driving a company vehicle in West Virginia. Cherry missed several months of work and required surgery to treat his injuries. Hudson left a voicemail message with Emmons informing her of the injury.

Cherry filed claims for benefits with the commission on November 13, 2009 and May 7, 2010, alleging an injury by accident on August 6, 2009. SUA filed a motion seeking its dismissal as a party defendant on the ground that it properly cancelled Full Circle's insurance coverage. On August 17, 2010, the commission granted Full Circle's motion to bifurcate the issues, deferring action on Cherry's claims until after SUA's motion was adjudicated.

Following evidentiary hearings, the deputy commissioner held that SUA, having complied with Code §§ 38.2-231 and 65.2-804(B), properly cancelled its insurance coverage with Full Circle. Additionally, the deputy commissioner rejected Full Circle's argument that SUA should be equitably estopped from denying coverage. Accordingly, the deputy commissioner dismissed SUA as a party defendant and Cherry's claim was referred to the hearing docket.

Full Circle appealed to the full commission, which affirmed the deputy commissioner, finding that SUA properly cancelled Full Circle's workers' compensation insurance coverage. This appeal followed.

## II. ANALYSIS

### A. Estoppel

In its first assignment of error, Full Circle contends that the commission erred by holding that SUA was not equitably estopped from denying coverage. Specifically, Full Circle argues

that the actions of SUA and Emmons, as SUA's agent, factually establish the required elements of equitable estoppel.

In addressing this argument, "we are guided by the principle that 'where a party seeks to invoke the doctrine of estoppel, [that party] has the burden of proving it by clear, precise and unequivocal evidence.'" Cibula v. Allied Fibers & Plastics, 14 Va. App. 319, 325, 416 S.E.2d 708, 711 (1992) (alterations in original) (quoting Rose v. Red's Hitch & Trailer Serv., 11 Va. App. 55, 59-60, 396 S.E.2d 392, 395 (1990)).  This "heavy burden of proof," Harris v. Criterion Ins. Co., 222 Va. 496, 502, 281 S.E.2d 878, 881 (1981), requires that the evidence "'not leave the matter to mere inference or conjecture but must be certain in every particular.'" John Hancock Mut. Life Ins. Co. v. Virginia Nat'l Bank, 212 Va. 31, 33, 181 S.E.2d 618, 620 (1971) (quoting Utica Mutual v. National Indemnity, 210 Va. 769, 733, 173 S.E.2d 855, 858 (1970)).

Under the doctrine of estoppel, the following elements must be established:

> (1) A material fact was falsely represented or concealed; (2) The representation or concealment was made with knowledge of the facts; (3) The party to whom the representation was made was ignorant of the truth of the matter; (4) The representation was made with intention that the other party should act upon it; (5) The other party was induced to act upon it; and (6) The party claiming estoppel was misled to his injury.

Boykins Narrow Fabrics Corp. v. Weldon Roofing and Sheet Metal, Inc., 221 Va. 81, 86, 266 S.E.2d 887, 890 (1980) (citing Coleman v. Nationwide Life Ins. Co., 211 Va. 579, 582-83, 179 S.E.2d 466, 469 (1971)).  Notwithstanding, "[t]he doctrine of estoppel applies only when the insured can prove he *justifiably* relied on the insurer's conduct and was thus misled . . . into believing the policy was still in force."  Harris, 222 Va. at 502, 281 S.E.2d at 881 (emphasis added).  Phrased differently, "[u]nwarranted reliance will not invoke the application of estoppel." Id. (citing 16B J. Appleman, Insurance Law and Practice § 9088, at 565 (1981)).

In the present case, Full Circle correctly notes that Emmons was an agent of SUA under Code § 38.2-1801, which provides that "[a] licensed agent shall be held to be the agent of the insurer that issued the insurance sold, solicited, or negotiated by such agent in any controversy between the insured or his beneficiary and the insurer." As such, Emmons' actions are attributable to SUA for the purposes of establishing the necessary elements for estoppel.

Nevertheless, Full Circle's estoppel argument fails because it cannot establish that its reliance on Emmons' misrepresentations was justifiable. While this Court, like the commission, is troubled by Emmons' repeated "failure to communicate the status of [Full Circle's] insurance policy when asked," we also note that Full Circle was fully aware of its insufficient down payment as of April 21, 2009. Notwithstanding, Full Circle did not pay the difference it owed on its down payment, nor did it make a single premium payment. These facts alone undermine Full Circle's argument that it could justifiably believe that its insurance coverage was still in effect because of Emmons' misrepresentations and "failure to communicate."

While it is true that Full Circle also received a "Dear Insured" letter from SUA on July 6, 2009, Full Circle could not justifiably rely on this letter to assume that its insurance policy was in effect because it arrived five days after Full Circle received a notice from the commission that their insurance had been cancelled. The result of these contradictory documents was that Full Circle was unclear as to the status of its insurance coverage as noted in the email sent to Emmons on July 15 asking about the meaning of the letter and the state of Full Circle's coverage.

From a state of such uncertainty and realizing that it had never paid the full sum initially required to bind coverage, any reliance by Full Circle on the "Dear Insured" letter and Emmons' misrepresentations was not warranted or justifiable. Accordingly, this Court finds that the commission did not err by declining to apply the doctrine of equitable estoppel.

B. Actual Notice

Next, Full Circle contends that the commission erred by holding that SUA followed the statutory requirements for cancelling Full Circle's policy. Specifically, Full Circle first argues that the commission inappropriately held that Code § 38.2-231 is applicable to the present case. Next, Full Circle argues that under Code § 65.2-804(B) SUA needed to prove that Full Circle had "actual receipt" of its policy's cancellation notice.

Title 38.2 of the Virginia Code generally governs insurance matters in the Commonwealth. See Code § 38.2-100, *et seq.* Code § 38.2-231(A)(1), entitled "[n]otice of cancellation . . . of certain liability insurance policies," provides that "[n]o cancellation or refusal to renew by an insurer of (i) a policy of insurance as defined in § 38.2-117 or 38.2-118 insuring a business entity . . . shall be effective unless the insurer delivers or mails to the first named insured at the address shown on the policy a written notice of cancellation . . . ." Under this provision, actual receipt of the cancellation notice is not required to be proven for the cancellation to be effective.

Conversely, Code § 65.2-804(B), which governs "notices of cancellation of [workers' compensation] insurance," does have an actual receipt requirement:

> No policy of insurance hereafter issued under the provisions of this title . . . shall be cancelled or nonrenewed by the insurer issuing such policy . . . unless, in the event of cancellation, said cancellation is for nonpayment of premiums; then 10 days' notice *shall be given the employer* and the Workers' Compensation Commission.

(Emphasis added). The purpose of the notice and delay requirement is "to protect the worker against a lapse in his employer's insurance coverage." Hartford Accident & Indem. Co. v. Fidelity & Guar. Ins. Underwriters, Inc., 223 Va. 641, 644, 292 S.E.2d 327, 328 (1982). Consistent with this purpose, "*actual receipt* is required for the [cancellation] notice to be

- 9 -

effective" under Code § 65.2-804(B). <u>Villwock v. Ins. Co. of N. America/Cigna</u>, 22 Va. App. 127, 132, 468 S.E.2d 130, 133 (1996) (emphasis added).

In the present case, the commission held that both Code §§ 38.2-231 and 65.2-804(B) are applicable to the present case. The commission then held, however, that Code § 65.2-804(B) "does not require SUA to prove [that Full Circle] received their notice of cancellation." Continuing, the commission concluded that SUA had satisfied the requirements for cancellation under Code § 65.2-804(B). On appeal, Full Circle correctly notes that the commission erred by holding that actual receipt of the notice of cancellation was not a requirement. <u>See</u> <u>Villwock</u>, 22 Va. App. at 132, 468 S.E.2d at 133. Nevertheless, the deputy commissioner found that "on April 27, 2009, SUA issued a cancellation notice notifying [Full Circle] that the policy would be terminated on May 18, 2009 if no further payments were made." This finding was incorporated into the commission's opinion, which also found "troubl[ing]" Full Circle's repeated assertions that it had not received "so many mailings and faxes."

Consequently, the issue before this Court becomes whether under the "right result . . . wrong reason" doctrine, this Court can say that SUA complied with Code § 65.2-804(B)'s requirements for cancelling Full Circle's workers' compensation insurance coverage. <u>Driscoll v. Commonwealth</u>, 14 Va. App. 449, 452, 417 S.E.2d 312, 313 (1992) ("An appellate court may affirm the judgment of a trial court when it has reached the right result for the wrong reason.").

When evaluating the commission's factual findings, this Court cannot "retry the facts, reweigh the preponderance of the evidence, or make [its] own determination of the credibility of the witnesses." <u>Wagner Enters.</u>, 12 Va. App. at 894, 407 S.E.2d at 35. Further, the commission's "conclusions upon conflicting inferences, legitimately drawn from proven facts, are equally binding on appeal." <u>Watkins</u>, 225 Va. at 101, 300 S.E.2d at 763.

In Villwock, this Court held that an employer received actual notice of its policy's cancellation even though the employer denied ever receiving such notice. 22 Va. App. at 130, 468 S.E.2d at 132. In that case, the insurance company sent a notice of cancellation to both the employer and the employer's insurance agent on August 27, 1993. Id. Even though the agent admitted that he received a copy of this notice, the employer denied having also received a copy. Id. at 131, 468 S.E.2d at 132. In holding that the employer did, in fact, receive the notice of cancellation, this Court pointed to the evidence of the insurance company's "regular procedure for mailing notices of cancellation" and concluded that the evidence establishes that employer's notice was mailed in the regular manner. Id. at 134, 468 S.E.2d at 134. Additionally, this Court noted that none of the insurance company's correspondence with the employer had been returned as undeliverable. Id. at 135, 468 S.E.2d at 134.

This Court's holding in Villwock is instructive in the present case. On April 27, 2009, SUA mailed a notice of cancellation to Full Circle and faxed a copy of the same to Emmons. Although Full Circle denied receiving this notice, SUA presented evidence concerning its regular procedure when mailing notices of cancellation. Specifically, the evidence provided that SUA sent Full Circle the notice of cancellation to Full Circle's proper mailing address via the U.S. Postal Service with proof of mailing. Additionally, Lundquist testified that a U.S. Postal Form 3877 was completed whereby a postal employee verified that there was a piece of correspondence for each entry on the form and that the address for each entry on the form matched the address of the correspondence. Finally, the cancellation notice addressed to Full Circle was not returned to AUI as undeliverable. Consequently, SUA met its burden of showing, based on credible evidence, that Full Circle actually received the notice of cancellation sent on April 27, 2009. As such, the commission did not err by holding that SUA complied with Code § 65.2-804(B).

In any event, Full Circle conceded on brief and during oral argument that it received the second notice of cancellation sent by the commission on July 1, 2009. Cherry's accident, moreover, did not occur until August 6, 2009 – 36 days after Full Circle concedes it received its notice of cancellation. As Code § 65.2-804(B) only requires "10 days' notice shall be given the employer" when the cancellation of a workers' compensation insurance plan "is for nonpayment of premiums," the evidence establishes that the actual notice requirement of Code § 65.2-804(B) was satisfied, and Full Circle's workers' compensation insurance policy was not in effect on the day of Cherry's accident.

Accordingly, even though the commission erroneously held that SUA complied with Code § 65.2-804(B) because actual notice is not required for cancellation, this Court affirms the commission's holding under the right result, wrong reason doctrine because SUA met its burden of showing, based on credible evidence, that Full Circle actually received its notice of cancellation.

### C. Lawful Cancellation

In its final assignment of error, Full Circle contends that because SUA failed to comply with the requirements of Code § 65.2-804(B), and because SUA is equitably estopped from denying coverage, Full Circle's insurance policy was effective as of the date of Cherry's injury. As a result, Full Circle argues that SUA "contractually must provide [Full Circle] coverage for the loss event . . . ."

As discussed above, however, equitable estoppel does not apply in the present case, and SUA complied with the requirements for cancellation under Code § 65.2-804(B). As a result, SUA's contract with Full Circle was terminated prior to the date of injury, and SUA is not obligated to provide Full Circle coverage for the loss event.

## III.  CONCLUSION

For the foregoing reasons, this Court affirms the rulings of the commission.

Affirmed.