UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Alston, Chafin and Senior Judge Haley
Argued at Fredericksburg, Virginia

MARIANNE FRANCONE

v.      Record No. 0357-17-4

FAIRFAX COUNTY PUBLIC SCHOOLS

MEMORANDUM OPINION* BY
JUDGE ROSSIE D. ALSTON, JR.
DECEMBER 19, 2017

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Kathleen Grace Walsh for appellant.

Michael N. Salveson (Charles F. Trowbridge; Littler Mendelson,
P.C., on brief), for appellee.

Marianne Francone ("appellant") appeals the decision of the Workers' Compensation

Commission ("Commission"), which denied her claim for coverage of a total left knee

replacement. Appellant asserts that the Commission erred in determining causation and in

declining to apply the two-causes rule. Upon review, we find that the Commission did not err

and affirm.

BACKGROUND

Appellant is a 49-year-old woman employed as a "crisis resource teacher" by Fairfax

County Public Schools ("appellee"). The record on appeal shows that appellant's lengthy history

of left knee issues began as far back as 2008. At that time, she underwent arthroscopic surgery

to treat her developing arthritis. In 2011, appellant experienced more pain in her left knee that

was aggravated by walking, climbing stairs, and when engaging in rotating movements. She was

diagnosed with degenerative arthritis, and exhibited significant cartilage loss in her left knee. In

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

February 2012, a student kicked appellant in the left knee and she began seeing Dr. Peter Lavine, who became her primary orthopedic physician. Dr. Lavine performed another arthroscopic surgery on appellant's left knee in April 2012. He informed her that a total knee replacement had become an option, noting that "the only thing that is going to help [appellant's condition] would be a unicompartmental knee arthroplasty or total knee arthroplasty." In December 2012, Dr. Lavine wrote that appellant's "options are limited," and he listed non-operative treatment consisting of cortisone injections, physical therapy, and prescription medications in lieu of a knee replacement. In February 2013, despite ongoing physical therapy and prescription medications, appellant reported that she was "unable to walk greater than 30 min[utes]."

In August 2013, Dr. Lavine again noted that appellant "has end stage Degenerative Joint Disease . . . with eburnation down to bone" and that "options are either non-operative as she has done, or arthroplasty . . . eventually she will end up here." Appellant's condition worsened in September 2013 – she reported to Dr. Lavine that her knee was "catching, grinding, and giving way" and that "she [had] to sit to dress, she [had] pain with ambulation, she [had] pain by the end of the day, she [had] trouble getting off of the floor and pain going up and down stairs." By this point, Dr. Lavine concluded that "she [was] inching to the point where arthroplasty is becoming her last option."

In August 2014, appellant suffered the injury that is the basis of her claim. Appellant was at work and carrying a box of files to her car when she slipped, falling on her left knee. After reporting the injury to appellee, appellee provided appellant a list of potential treating physicians, and she selected Dr. Thomas Martinelli. In September 2014, Dr. Martinelli recommended a total left knee replacement. Dr. Martinelli noted that the knee had "arthritis . . . all over" and that "ultimately [appellant] is heading toward knee replacement surgery." By March 2015, appellant still had not had a knee replacement but had continued receiving pain injections. Dr. Martinelli

noted that "the process overall is going to be that she gets a knee replacement." Appellant sustained another injury in April 2015 when she tripped going up a staircase, and she finally stated her desire to get a knee replacement. Finally, in June 2015, Dr. Martinelli examined appellant again and wrote "[appellant] does need to get her knee replaced."

After a hearing before a deputy commissioner, appellant's claim for coverage of a total knee replacement was denied. The deputy commissioner found, based on appellant's extensive history of left knee issues, that the August 2014 injury did not necessitate the knee replacement surgery. The deputy commissioner relied on Dr. Lavine's opinion and noted that while he had not examined appellant in person following the August 2014 injury, that he had reviewed all of her medical records and considered appellant's entire history of knee problems. With specific regard to the August 2014 injury, Dr. Lavine had "opined that [appellant] should have recovered from [the] minor accident within approximately two months." Appellant appealed to the Commission, which affirmed the deputy commissioner. The Commission concluded that the "medical record illustrated that [appellant] had significant, pre-existing left knee problems and injuries" and that the August 2014 injury did not play a role in the causation. This appeal followed.

ANALYSIS

I. The Commission Did Not Err in Determining Causation

In her first assignment of error, appellant asserts that the deputy commissioner and Commission erred by rejecting the theory that the August 2014 injury necessitated the knee replacement surgery. We disagree.

When examining an appeal from the Commission, this Court "view[s] the evidence and all reasonable inferences that may be drawn from that evidence in the light most favorable to employer, the party prevailing below." Stillwell v. Lewis Tree Serv., 47 Va. App. 471, 475, 624

- 3 -

S.E.2d 681, 682 (2006). Determining whether a causal link exists between an accident and a debilitating injury involves a "consideration of all the circumstances." Reserve Life Ins. Co. v. Hosey, 208 Va. 568, 571, 159 S.E.2d 633, 635 (1968) (citation omitted). "Factual findings by the [C]ommission that are supported by credible evidence are conclusive and binding upon this Court on appeal." S. Iron Works, Inc. v. Wallace, 16 Va. App. 131, 134, 428 S.E.2d 32, 34 (1991). "Likewise, the Commission's conclusions upon conflicting inferences, legitimately drawn from proven facts, are equally binding on appeal." Watkins v. Halco Eng'g, Inc., 225 Va. 97, 101, 300 S.E.2d 761, 763 (1983). "The fact that contrary evidence may be found in the record is of no consequence if credible evidence supports the [C]ommission's finding." Manassas Ice & Fuel Co. v. Farrar, 13 Va. App. 227, 229, 409 S.E.2d 824, 826 (1991) (citing Russell Loungewear v. Gray, 2 Va. App. 90, 95, 341 S.E.2d 824, 826 (1986)). So long as the record contains credible evidence supporting the Commission's findings, any contrary evidence may be disregarded. Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991).

Here, the record contains significant, credible evidence establishing that appellant's need for a knee replacement long predated the August 2014 injury. Her arthritis had been documented as far back as 2008 when she first underwent arthroscopic surgery. She was later diagnosed with a more severe condition, degenerative arthritis, in 2011. During that time period, her treating physician, Dr. Lavine, repeatedly advised appellant that a total knee replacement was an option and that she would eventually have no choice. In August 2013, Dr. Lavine wrote "options are either non-operative as she has done, or arthroplasty . . . eventually she will end up here." Less than a month later, in September 2013, appellant reported that her knee would catch, grind, and give way, that she endured pain while walking, and that she could only stand for brief periods. Dr. Lavine stabilized appellant's knee pain with injections and prescription pain medications, but

- 4 -

the record is clear that the non-operative treatment was never intended to completely obviate a knee replacement surgery – it merely postponed the inevitable.

Furthermore, the Commission did not err in relying on Dr. Lavine's opinion because he treated appellant for an extensive period of time. See Alston v. U.S. Air, Inc., 61 O.I.C. 19, 20 (1982). Dr. Lavine consistently noted appellant's eventual need for a knee replacement for over two years. The Commission observed that "he treated the [appellant] in 2012. Dr. Lavine reviewed [appellant's] medical records and convincingly explained that the incident of August 2014 had no relationship to the [appellant's] need for a total knee replacement." Although Dr. Martinelli stated that the August 2014 injury "worsened the underlying condition," his notes from October 2014 reflect that "*ultimately* [appellant] *is heading toward* knee replacement surgery." In March 2015, Dr. Martinelli wrote "*the process overall, it is going to be* that she gets a knee replacement." Thus, even after the injury appellant claims immediately necessitated a knee replacement, her new physician's diagnosis mirrored that rendered by Dr. Lavine prior to the August 2014 injury – that a knee replacement would *eventually* be necessary. Not until June 2015 did Dr. Martinelli state unequivocally that appellant "need[ed] her knee replaced." Notably, Dr. Martinelli rendered that opinion following another injury to appellant's knee, and after appellant initiated her claim to the Commission.

We recognize that the record contains some evidence contrary to Dr. Lavine's conclusions, but our standard of review dictates adherence to the credible, factual determinations made by the Commission. See Manassas Ice & Fuel, 13 Va. App. at 229, 409 S.E.2d at 826. This Court is bound to follow the Commission's findings so long as credible evidence exists within the record. Id.

Nothing in the record indicates that Dr. Lavine's opinion is unsupported by credible evidence. Appellant's primary argument that Dr. Lavine's opinion is not credible is that he

"disregard[ed] the totality of Dr. Martinelli's treatment" by failing to review appellant's records following the August 2014 injury. Upon review of the Commission's reasoning, appellant's argument fails. The Commission "recognize[d] that Dr. Lavine did not examine [appellant] after the August 2014 injury . . . [but] Dr. Lavine reviewed [appellant's] medical records and convincingly explained that the incident of August 2014 had no relationship to [appellant's] need for total knee replacement." Thus, Dr. Lavine considered the August 2014 injury and remained confident in his opinion. Dr. Lavine "opined that [appellant] should have recovered from [the August 2014] minor accident within approximately two months." In her brief, appellant omitted this part of Dr. Lavine's opinion and instead cherry-picked other statements, placing them out of context to support her arguments.

This Court is not in a position to relitigate the facts and independently assess the medical records. See S. Iron Works, 16 Va. App. at 134, 428 S.E.2d at 34. Moreover, while we may be sympathetic to appellant's circumstances, we are duty-bound to review the evidence in the light most favorable to appellee, as the prevailing party below, and recognize that the Court must defer to the Commission on any conflicting inferences. Stillwell, 47 Va. App. at 475, 624 S.E.2d at 682; Watkins, 225 Va. at 101, 300 S.E.2d at 763.

Based on that standard, we hold that the Commission did not err in rejecting appellant's argument.

## II. The Commission Did Not Err by Declining to Apply the Two-Causes Rule

Appellant's second assignment of error argues that the Commission erred by not applying the two-causes rule. We disagree.

"The Commission's determination of causation is a finding of fact and is conclusive and binding on appeal if supported by credible evidence in the record." S. Iron Works, 16 Va. App. at 134, 428 S.E.2d at 34. The two-causes rule applies when "a disability has two causes; one

- 6 -

related to the employment and one unrelated." Smith v. Fieldcrest Mills, Inc., 224 Va. 24, 28, 294 S.E.2d 805, 808 (1982) (quoting Bergmann v. L & W Drywall, 222 Va. 30, 32, 278 S.E.2d 801, 802 (1981)).  It is well established that the employer takes the employee as it finds her, including pre-existing injuries and infirmities, and is responsible for the effect of a new accident that aggravates, accelerates, or exacerbates the pre-existing condition and causes new injury. Ohio Valley Constr. Co. v. Jackson, 230 Va. 56, 58, 334 S.E.2d 554, 555 (1985); S. Iron Works, 16 Va. App. at 133-34, 428 S.E.2d at 34.  "[W]here the compensable work injury accelerates or aggravates the pre-existing condition, thus requiring surgical intervention at a time earlier than that previously anticipated, the employer is responsible for that surgery."  Spangler v. Cochran's Blocks, Inc., VWC File No. 140-10-69 (Feb. 9, 1998).

For the two-causes rule to apply, appellant had to prove that the August 2014 injury damaged her knee to the extent that it accelerated her need for a total knee replacement. However, as we already noted above, the record reflects that in the months following the August 2014 injury, appellant continued receiving the same non-operative treatment as before: injections and pain medications.  Furthermore, Dr. Martinelli noted that "*ultimately* [appellant] *is heading toward* knee replacement surgery" and "*the process overall is going to be* that she gets a knee replacement."  These notes do not support the inference that the August 2014 injury accelerated appellant's condition and "require[d] surgical intervention at a time earlier than that previously anticipated."  Spangler, VWC File No. 140-10-69.  On the contrary, the evidence showed that appellant's prognosis did not change following the August 2014 injury.

Accordingly, the Commission did not err in declining to apply the two-causes rule because it concluded that appellant's need for a knee replacement arose from a single cause.[1]

---

[1] Appellant cites Smith for the proposition that the Supreme Court has previously reversed the Commission for failing to apply the two-causes rule, and asserts that Smith dictates the same result here.  A closer examination of Smith leads us to conclude that it is inapplicable.

Because the Commission concluded that causation was limited to appellant's prior history, a further analysis of causation under the two-causes rule would have been extraneous.

The Commission's factual determinations are supported by credible evidence and are binding on this Court. Therefore, we hold that the Commission did not err in denying appellant's claim.

Affirmed.

---

In <u>Smith</u>, the Court did not reverse the Commission on the merits, but reversed and remanded on procedural grounds because the Commission had not clearly developed within the record (1) whether the claimant even suffered from the disputed medical issue, and (2) whether the medical issue contributed to claimant's disability. <u>See</u> <u>Smith</u>, 224 Va. at 28-29, 294 S.E.2d at 808.