# Richmond

## BIRTEE GRIFFEY v. CLINCHFIELD COAL CORPORATION.

March 5, 1945.

Record No. 2933.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Fred B. Greear*, for the appellant.

*William A. Stuart* and *Burns & Lively*, for the appellee.

EGGLESTON, J., delivered the opinion of the court.

Silas Griffey, while working as a coal loader in a mine of the Clinchfield Coal Corporation, was killed by falling slate. A claim for compensation filed by his widow, on behalf of herself and her infant children, was denied by the Industrial Commission on the ground that his death was due to his "wilful misconduct," or his "wilful breach" of a rule or regulation adopted by the employer and approved by the Industrial Commission, knowledge of which had been brought to the employee prior to the accident, within the purview of section 14 of the Workmen's Compensation Act (Acts 1918, ch. 400, sec. 14, p. 640; Michie's Code of 1942, sec. 1887(14)).

The material portion of that section provides: "No com-

pensation shall be allowed for an injury or death due to the employee's wilful misconduct, * * * or the wilful breach of any rule or regulation adopted by the employer and approved by the industrial commission, and brought prior to the accident to the knowledge of the employee. * * * "

The specific finding of the Commission was that Griffey had wilfully refused to set a "safety post" or brace to support the ceiling in the place where he was working, as directed by the mine foreman, and as required by the rules of the company, of which he had knowledge, and that his refusal to use this safety appliance was the cause of his death.

The appellant contends that this finding is contrary to the law and the evidence and is without evidence to support it. First, she says, the evidence fails to support the Commission's finding that the employee's failure to set the safety post amounted to "wilful misconduct" or a "wilful breach" of the employer's safety rules within the meaning of section 14 of the Act. She argues that such failure amounted at most to mere negligence on his part and that this does not bar compensation to his dependents. We cannot agree with this contention.

The evidence shows that Griffey was an experienced miner and had worked for the Clinchfield Coal Corporation for more than two years. When he first went to work for the company he was given a printed copy of its "Special Mine Rules" for which he receipted in writing. These rules had been promulgated by the employer and approved by the Industrial Commission. We find among them these pertinent rules:

"RULE 23: MAKING WORKING PLACE SAFE.

&ast; &ast; &ast; &ast; &ast; &ast;

"(b) Especial attention is directed to the timbering or removal of unsafe roof, or coal that has been undermined, and every employee must take especial pains to make the place at which he is at work safe from overhanging strata,

as soon as a dangerous condition is observed by him or called to his attention."

"RULE 25: MINE TIMBERS.

\*　　\*　　\*　　\*　　\*　　\*

"(f)　Every employee working rooms shall keep set at all times, two or more safety posts for his protection while loading.　Such timbers to be kept up until permanent timbers are set.

"(g)　No employee shall, under any circumstances, work without these safety posts, in pillar work or in any other place.

"(h)　Every employee is required to add to or renew all timbers in his room or working place whenever and wherever it may be necessary, \* \* \* .

"(i)　Every employee is reminded that overhanging strata or coal which has been mined by hand or cut by machine must be watched.　Therefore, each employee is required to set sufficient blocks, sprags or timbers, when mining or cutting coal or when working in places where coal has been mined or machine cut, to protect himself from falls of coal and roof."

On the morning of the accident, Griffey and his companion, Ralph Sutherland, were engaged in loading into a car loose coal which had been cut and blasted from the surrounding area.　The "room," or space from which the coal had previously been removed, was about twenty-five feet wide and about six or seven feet high.　Two seams of coal, each about three feet thick, were embraced within the height of the room, and these were separated by a stratum of slate several inches thick, and called, in mining parlance, a "middleman."　In order to separate the coal from the slate, the coal in the upper seam is first removed, then the slate and finally the coal in the lower seam.　This is accomplished by loading the material into a car which is pushed along a track to within a few feet of the pile of loose coal or slate. As is customary with companion coal loaders, Griffey worked one side of the end of the car next to the pile of coal, and his companion (Sutherland) worked on the other.

At the time of the accident they had removed a part of the loose coal from the upper seam, which left a space of some three feet between the ceiling and the top of the "middleman." According to the evidence it is neither customary nor necessary to brace the ceiling directly over the "middleman." This is so because the coal loader, in doing his work, is not required to occupy this space. But it is customary and necessary that safety posts be placed on both sides of the room and as close as practicable to the edge of the "middleman." These braces support the ceiling directly above the place where the loaders are working, that is, between the end of the car and the loose coal. These temporary supports are replaced by permanent braces after the loose material is removed and before a new cut is made into the face or wall of coal.

About an hour before the accident a foreman passed through the room where Griffey and his companion were working. He observed that the customary safety posts were not in place and directed that Griffey and Sutherland set them. They promised to do so "in a minute." Sutherland obeyed this command but Griffey did not. Later, when they were warned by the noise of the cracking ceiling that the situation was dangerous, Sutherland reminded Griffey that the latter had not set his post. But even this warning went unheeded, and shortly thereafter a large block of slate fell from the ceiling and crushed Griffey. Sutherland was not injured.

This is not all. Within ten days of the accident a mine inspector reported that Griffey was disobeying the employer's rule with respect to setting the required safety posts. He was reported to the general mine foreman by whom he was reprimanded and allowed to continue his work upon promising that he would comply with this necessary safety requirement.

We do not have here a case where the employee has been merely guilty of negligence. Nor is it a case in which the employee, on the impulse of the moment and in an emergency, has thoughtlessly violated a safety measure pro-

mulgated for his security, as was the situation in *Williams* v. *Benedict Coal Corp.*, 181 Va. 478, 25 S. E. (2d) 251, relied upon by the appellant. In the case before us the employee, with actual knowledge of the safety rule, with practical knowledge of its importance and purpose, and despite the warning of his superior and that of his fellow-workman, deliberately and wilfully failed to comply with the regulation, and failed to use the safety appliance designed for his protection and security. That the situation comes squarely within the purview of section 14 of the Act is too clear for argument. See *Riverside, etc., Cotton Mills* v. *Thaxton*, 161 Va. 863, 871, 872, 172 S. E. 261.

There is no merit in the contention that the safety rules were not enforced by this employer. The great preponderance of the evidence points to the conclusion that they were.

Next, the claimant contends that the failure of Griffey to erect the required safety post was not the proximate cause of his death. She contends that the break in the ceiling occurred above the "middleman," where, as we have seen, no brace is required, and that even if Griffey had placed a post so as to brace the ceiling above the place where he was working, this would not have saved him. This contention is not sound.

While there is some evidence which tended to support this view, it is in direct conflict with that of other witnesses for the employer, which the Commission has accepted. Sutherland, the only eyewitness to the accident, testified that the piece of slate which fell and crushed Griffey, extended from the edge of the "middleman" to the end of the car, and was thus directly above the place where Griffey was working. He also said that the thicker portion of the slate which extended over his (Sutherland's) side, due to the support which he had placed under it, did not fall. Several witnesses expressed the positive opinion that a safety post properly placed on Griffey's side of the room, would have prevented the fall of the slate from the ceiling. The Commission's finding on this issue of fact, being supported by

credible evidence, is binding on us. *Grimes* v. *Janney-Marshall Co., ante*, pp. 317, 319, 32 S. E. (2d) 76, 77; *Carter* v. *Hercules Powder Co.*, 182 Va. 282, 288, 28 S. E. (2d) 736, 739, and cases there cited.

We find no error in the order appealed from, and it is

*Affirmed.*