COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Petty, Beales and Decker
Argued at Lexington, Virginia


MELVIN L. LAYNE

                                                    OPINION BY
v.         Record No. 1098-14-3        JUDGE RANDOLPH A. BEALES
                                                    FEBRUARY 10, 2015
CRIST ELECTRICAL CONTRACTOR, INC. AND
  ASSURANCE SERVICES CORPORATION

            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Monica Taylor Monday (Matthew W. Broughton; Gregory D.
            Habeeb; Robert E. Evans; Gentry, Locke, Rakes & Moore, on
            briefs), for appellant.

            Roberta A. Paluck (Christopher M. Kite; Lucas & Kite, PLC, on
            brief), for appellees.

            Amicus Curiae: Virginia Trial Lawyers Association (Brody H.
            Reid; ReidGoodwin, PLC, on brief), for appellant.


       The Virginia Workers' Compensation Commission (commission) found that Melvin L.

Layne (claimant) was not entitled to workers' compensation benefits because claimant

committed a willful breach of a workplace safety rule.  See Code § 65.2-306(A)(5).  On appeal,

claimant asserts that there was not a workplace safety rule that applied to the work he was

performing at the time of his injury, that the commission applied the wrong legal standard in

determining whether his actions were willful for purposes of Code § 65.2-306(A)(5), and that his

actions were at most negligent.  For the following reasons, we affirm the commission's decision

in this case.

## I. BACKGROUND

Under settled principles of appellate review, we consider the evidence in the light most favorable to employer, as the prevailing party before the commission. Apple Constr. Corp. v. Sexton, 44 Va. App. 458, 460, 605 S.E.2d 351, 352 (2004). Consistent with this well-established standard, "we cannot 'retry the facts, reweigh the preponderance of the evidence, or make [our] own determination of the credibility of the witnesses.'" McKellar v. Northrop Grumman Shipbuilding Inc., 63 Va. App. 448, 451, 758 S.E.2d 104, 105 (2014) (quoting Wagner Enters. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991)). "In addition, the commission's 'conclusions upon conflicting inferences, legitimately drawn from proven facts, are equally binding on appeal.'" Id. (quoting Watkins v. Halco Eng'g, Inc., 225 Va. 97, 101, 300 S.E.2d 761, 763 (1983)).

In this case, claimant was an employee of Crist Electrical Contractor, Inc. (employer), which was a subcontractor performing electrical work in a massive Lynchburg warehouse owned and operated by Delta Star, Inc. On January 19, 2009, at about 11:30 a.m., claimant was installing electrical conduit from a scissor lift high up in Delta Star's core cutting room – and had almost completed installing the conduit. Delta Star's "bridge crane," which was operational at that time, hit claimant's scissor lift – causing both the scissor lift and claimant to fall far to the floor. Through a personal representative, claimant filed a claim for benefits in the commission alleging injuries to his brain, head, face, spine, and multiple extremities.[1]

Employer acknowledged that claimant's accident arose out of and occurred in the course of the employment. See Code § 65.2-101. However, employer defended against the claim on the ground that claimant was violating employer's "lockout-tagout" rule at the time of the

---

[1] It is undisputed that claimant suffered serious injuries, including brain damage. After a claim for benefits was filed on his behalf, claimant was unable to testify at the evidentiary hearing before the deputy commissioner due to his brain damage.

accident.  See Code § 65.2-306(A)(5).  Employer asserted that the bridge crane would not have

hit the scissor lift – and claimant's resulting injuries would not have occurred – if claimant had

rendered the bridge crane inoperable by following the "lockout-tagout" safety procedure.

The deputy commissioner held an evidentiary hearing on October 20, 2010, when several

witnesses testified.  The testimony taken at that proceeding establishes that employer hired

claimant about four-and-a-half months prior to claimant's workplace accident on January 19,

2009.  Employer assigned claimant the role of "electrician's helper."  Although an electrician's

helper held the lowest status in employer's jobsite hierarchy, claimant's supervisors considered

him an "experienced" helper – rather than a mere "green" helper.[2]  Harry Spruce, a foreman for

employer at the time of claimant's workplace accident, testified that he had known claimant for

several years, that he and claimant "had worked together on a couple other projects," and that

claimant "basically knew what he was doing" because claimant had "been in the [electrical] field

for a while."

John Crist, employer's vice president, testified that the Delta Star warehouse's core

cutting room had a bridge crane that moved high above (and horizontal to) the floor.  The bridge

crane operated on rails that were embedded in the walls of the core cutting room.  When the

bridge crane's rails were electrified (or "hot"), the bridge crane was able to move.  Therefore,

before installing conduit or doing other tasks in the bridge crane's vicinity, the bridge crane and

its electrified rails needed to be rendered inoperable through a procedure known as

"lockout-tagout."  Although it is undisputed that claimant was never given any written materials

addressing the "lockout-tagout" procedure and did not attend employer's formal safety

orientation, Spruce testified that he gave claimant a tour of the Delta Star facility in which he

discussed safety procedures – including "lockout-tagout."  Spruce explained that he had stressed

_____

[2] In fact, the evidence establishes that claimant often had a less experienced "helper" of
his own assigned to him.

to claimant that open, electrified rails are dangerous and also emphasized the importance of ensuring that the bridge crane was locked out before working in that area.

Dennis Branham, another of employer's foremen, testified that he also toured the facility with claimant and told claimant about the importance of the "lockout-tagout" procedure. Branham described the "lockout-tagout" procedure and explained its importance during the evidentiary hearing. Branham testified that employer's workers who needed to do work in the path of Delta Star's bridge crane were required to get the bridge crane operator's permission to work in that area and ensure that the bridge crane was rendered inoperable. According to Branham, the process of locking out the bridge crane occurs when a person finds the crane's "disconnect box," pulls the "handle down in the off position," and puts a lock in the "holes where that handle comes down." Branham explained, "You put your lock through there. That prevents anybody from coming by and pushing that lock up."[3] During his examination at the evidentiary hearing, Branham indicated that it does not take "a mechanical engineer" or someone with a "high level of electrician's training" to perform the process of applying the lock to the bridge crane's disconnect box. Branham denied that this procedure was "just a good idea," but instead testified that he told claimant, "I said this is our procedure here that we [used] when we work on these cranes."

Spruce testified that he "knew [claimant] knew lock out, tag out procedures" based on his interactions with claimant. While the record does not indicate that employer provided claimant with his own lock to be used on the bridge crane's disconnect box, David Wright, a Delta Star employee, testified that he showed claimant where Delta Star's locks were in its maintenance department and that he and claimant had locked out the bridge crane together. Clyde Campbell, another Delta Star employee, testified that claimant had informed him on several occasions that

---

[3] It appears from the record that "tagging out" is an alternative means of rendering machinery inoperable.

he was going to lock out the bridge crane. Although Campbell testified that claimant's helper was with claimant on many of those occasions, Campbell explained that sometimes claimant would do so alone.

The record shows that claimant successfully locked out the bridge crane on the morning of claimant's workplace accident – three hours before the accident occurred. Wright testified that claimant had asked for permission "to lock the [bridge] crane out." Wright witnessed claimant apply a lock to the crane at approximately 8:30 a.m., thereby rendering the bridge crane inoperable. Claimant did some work from a boom lift for 30 to 45 minutes and then came down from the boom lift. Wright asked claimant if he could again use the bridge crane, and claimant indicated that he could.

Wright testified that he observed claimant "unlock the [bridge crane disconnect] box" so that the bridge crane could be used again. There is no evidence that the bridge crane was locked out from that point until claimant's workplace accident occurred at approximately 11:30 a.m. on the same morning – even though claimant apparently had returned to his work in the core cutting room at about 10:45 a.m., this time using the scissor lift that was then struck by the bridge crane.

Michael Manning, Delta Star's bridge crane operator at the time of the accident, testified that the scissor lift was about five feet from the bridge crane's disconnect box when he arrived at the scene of the accident. Spruce also testified that the scissor lift was "right beside" and "[a]lmost up against" the disconnect box for the bridge crane. Spruce testified that the disconnect box was not locked out and that there was no lock in the area. The evidence was undisputed at the evidentiary hearing that the bridge crane could not operate if the disconnect box had been locked out.

Following the evidentiary hearing, the deputy commissioner issued an opinion finding that an award of benefits was barred under Code § 65.2-306(A)(5) because claimant had violated

the "lockout-tagout" procedure. Claimant sought review by the full commission. The deputy commissioner's decision was affirmed, with one commissioner dissenting, on March 20, 2013. However, in a published opinion, this Court held that the review of the deputy commissioner's decision had not been conducted by a properly constituted full commission review panel. See Layne v. Crist Electrical Contractor, Inc., 62 Va. App. 632, 751 S.E.2d 679 (2013). We reversed the commission's decision on that specific basis and remanded the matter for reconsideration by a properly constituted full commission review panel – without addressing the merits of employer's defense under Code § 65.2-306(A)(5). Id. at 635 n.1, 751 S.E.2d at 681 n.1.

On remand from this Court, the full commission issued a second review opinion on May 20, 2014 affirming the deputy commissioner's decision on the merits, again with one commissioner dissenting.[4] The full commission's majority opinion adopted the findings from its first review opinion and expressly held that "claimant's conduct was not simply negligent." Claimant now appeals to this Court.

## II. ANALYSIS

Code § 65.2-306(A) states, in pertinent part, "No compensation shall be awarded to the employee or his dependents for an injury or death caused by . . . [t]he employee's willful breach of any reasonable rule or regulation adopted by the employer and brought, prior to the accident, to the knowledge of the employee . . . ." Code § 65.2-306(A)(5). Under Code § 65.2-306(B), the party raising a defense under Code § 65.2-306(A) "shall have the burden of proof with respect thereto." Therefore, in this case, employer had the burden of satisfying the following elements of the defense under Code § 65.2-306(A)(5):

> To prevail on the defense of a willful violation of a safety rule, employer must prove that: (1) the safety rule was reasonable;

---

[4] Another commissioner wrote a separate concurring opinion, in which he addressed the state of the law relating to the willful misconduct defense under Code § 65.2-306(A)(5). That commissioner concurred that the elements of the defense had been proven in this case.

> (2) the rule was known to the employee; (3) the rule was promulgated for the benefit of the employee; and (4) the employee intentionally undertook the forbidden act. Spruill v. C.W. Wright Construction Co., 8 Va. App. 330, 334, 381 S.E.2d 359, 360-61 (1989).

Owens Brockway & Nat'l Union Fire Ins. Co. v. Easter, 20 Va. App. 268, 271, 456 S.E.2d 159, 161 (1995); see also Riverside & Dan River Cotton Mills, Inc. v. Thaxton, 161 Va. 863, 172 S.E. 261 (1934). Moreover, as the Supreme Court has held,

> If the safety rule is reasonable and is known to the employee and for his benefit, and yet he intentionally does the forbidden act, then he is guilty of wilful misconduct within the meaning of [former] § 65-35. The employer is not required to prove that the employee, with the rule in mind, purposely determined to break it.

Mills v. Virginia Electric & Power Co., 197 Va. 547, 552, 90 S.E.2d 124, 127 (1955).

The Supreme Court in Mills stated, "The questions of whether or not a claimant has been guilty of wilful misconduct and whether such misconduct was a proximate cause of the employee's accident are issues of fact." Id. at 551, 90 S.E.2d at 127. The Supreme Court further explained that "the decision of the Commission 'shall be conclusive and binding as to all questions of fact,' and we have no right to disturb the Commission's finding of fact if it be supported by credible evidence." Id. (quoting former Code § 65-94); see Code § 65.2-706(A) (stating that the commission's decision "shall be conclusive and binding as to all questions of fact"); see also, e.g., Spruill, 8 Va. App. at 333, 381 S.E.2d at 360; Uninsured Employer's Fund v. Keppel, 1 Va. App. 162, 165, 335 S.E.2d 851, 852 (1985). "[W]e must defer to the commission's findings of fact if supported by credible evidence in the record." Diaz v. Wilderness Resort Ass'n, 56 Va. App. 104, 114, 691 S.E.2d 517, 522 (2010).[5]

---

[5] We observe this Court's statement in Buzzo v. Woolridge Trucking, Inc., 17 Va. App. 327, 437 S.E.2d 205 (1993), that "whether [the employee's] conduct in the abstract constitutes willful misconduct is a mixed question of fact and law and is reviewable by this Court on appeal." Id. at 333, 437 S.E.2d at 209. This Court cited as supporting authority the decision in Israel v. Virginia Employment Comm'n, 7 Va. App. 169, 172, 372 S.E.2d 207, 209 (1988),

A. EXISTENCE AND APPLICABILITY OF SAFETY RULE

In his first assignment of error, claimant contends:

> 1. The Commission erred in finding that the employer met its burden of proving the necessary elements of the willful misconduct defense.
>     a. The Commission erred in finding that the lockout procedure was a "safety rule."
>     b. The Commission erred in finding that the lockout procedure applied to work Layne was performing when he was injured.

Binding case law interpreting Code § 65.2-306(A)(5) holds that an employer may rely on

the existence of a workplace safety rule that has been presented to an employee either in writing

or verbally. For example, in Peanut City Iron & Metal Co. v. Jenkins, 207 Va. 399, 400, 150

S.E.2d 120, 121 (1966), the Supreme Court stated, "There was an oral work rule of the company

that before an automobile was dismantled with a blow torch air holes were to be made in its gas

tank by means of an axe or pick." Likewise, in Phipps v. Rann Industries, Inc., 16 Va. App. 394,

396, 429 S.E.2d 886, 887 (1993), this Court observed, "Hairfield's verbal instructions to the

employees is Rann's basis for asserting the existence of the safety rule and the limits of the

safety rule." Thus, because claimant had received verbal directives informing him of the

"lockout-tagout" rule, his argument on brief that employer's *written* "lockout-tagout" procedure

---

which involved misconduct in the context of eligibility to receive unemployment compensation. This Court subsequently has stated that certain specific aspects of the willful misconduct defense for employers in the workers' compensation context under what is currently Code § 65.2-306 involve mixed questions of law and fact. See Easter, 20 Va. App. at 271-72, 456 S.E.2d at 161 ("Whether the rule is reasonable and applies to the situation from which the injury results, and whether the claimant knowingly violated it, is a mixed question of law and fact to be decided by the commission and reviewable by this Court."). At any rate, the only aspect of the willful misconduct defense that the Supreme Court has actually held involves a mixed question of law and fact is whether the employer "strictly enforced" the workplace safety rule – an issue not raised in claimant's assignments of error here. See Peanut City Iron & Metal Co. v. Jenkins, 207 Va. 399, 403, 150 S.E.2d 120, 123 (1966) (holding that the issue of whether the rule has been strictly enforced is a mixed question of law and fact). Nevertheless, in this case, for the reasons explained *infra*, we hold that the commission did not err in applying Code § 65.2-306(A)(5) and that its findings of fact were supported by credible evidence.

was insufficient to be a workplace safety rule and that claimant never received a copy of that written procedure cannot, standing alone, defeat employer's defense under Code § 65.2-306(A)(5).

Viewing the evidence in the light most favorable to employer (as we must, since the employer prevailed below), the record supports the commission's finding that employer verbally communicated the "lockout-tagout" rule to claimant. Furthermore, the evidence also supports the commission's finding that the "lockout-tagout" rule that employer verbally communicated to claimant actually applied to the work that claimant was performing when he was injured on January 19, 2009.

Harry Spruce testified that he gave claimant a tour of the Delta Star facility, during which he addressed the need to follow the "lockout-tagout" procedure when working near the "hot rails" of the bridge crane. Spruce testified that he told claimant to make sure that the crane was locked out "if [claimant] was anywhere around them." Spruce explained:

> I went to each crane rail and showed the disconnects on the crane rail and said that if you're working in the area of the crane rail it needs to be locked out and tagged out and the [Delta Star] supervisor in that area needs to be told that you [are] going to lock it out. It was up to them when we could lock it out and when we could work in the area and when we couldn't work in the area.

Spruce indicated that claimant understood employer's rule relating to this procedure.

In addition, Dennis Branham testified that he walked through the Delta Star facility with claimant on claimant's first day with employer. He told claimant that the bridge crane's rails were "very dangerous" and specifically warned claimant that, if an employee was "up in a lift," then the bridge crane "could hit the lift" if the bridge crane was not locked out. Branham testified that he showed claimant where the "lockout boxes" or "disconnect switches" for the bridge crane were located. He testified that he explained the "lockout-tagout" procedure to claimant step-by-step, stating that he told claimant:

- 9 -

These cranes are very dangerous. They are, you can be hit by them, you can shove something into the electrical rods on the side that I showed in the exhibit right there. I said you go to the person operating that crane in that area. You tell that person I have some work over here to do, is it okay. And if the time, if that Delta Star employee says yes you can go ahead; and then you proceed to take your lock, you cut the disconnect off, and you lock it out. You do what work you have there, you get down, make sure everything is out of the way and then you go take your lock off and tell the operator okay, I'm done now. The Delta Star employee can then go back to work.

Branham testified that he told claimant that "this is our procedure here" when working around a bridge crane – adding that he had observed claimant working near the bridge crane on several occasions with it properly locked out and inoperable.

Therefore, based on testimony adduced at the evidentiary hearing, the full commission did not err in determining that claimant was aware of employer's "lockout-tagout" rule communicated by his supervisors – and that this rule applied to the work claimant was doing at the time of his workplace accident on January 19, 2009.

### B. WILLFULNESS VS. NEGLIGENCE

In his second, third, and fourth assignments of error, claimant alleges:

2. The commission erred in finding that the claimant willfully, knowingly, and/or intentionally violated a known safety rule adopted by the employer.

3. The commission erred in finding that the claimant's conduct was not simply negligent.

4. The commission erred in finding that, to establish a willful violation of a safety rule, an employer does not have to prove that the claimant intended to violate the safety rule.

As an initial matter, claimant challenges (in his fourth assignment of error) the legal standard used by the commission for determining whether a workplace safety rule has been willfully violated for purposes of Code § 65.2-306(A)(5). Claimant interprets the term "willful breach" in Code § 65.2-306(A)(5) to require proof by a preponderance of the evidence that the

employee actually intended to violate the workplace safety rule. In other words, claimant asserts that employer was required to prove claimant's specific intent to break the workplace safety rule at the time that claimant violated the rule. A majority of the full commission disagreed with this position in its May 20, 2014 review opinion, explaining:

> To require, as argued by the dissent, the employer to prove the claimant's state of mind, i.e., that he intended to violate the safety rule, rather than simply that he intended the act which constituted a violation of the rule, would eviscerate the defense [under Code § 65.2-306(A)(5)], which defense was specifically provided by the General Assembly.

The commission's majority opinion specifically denied the dissenting commissioner's assertion that the "result here is a *per se* rule that violating a known and enforced safety rule, even negligently, bars compensation." Instead, the commission majority opinion explained that the evidence simply "proved the necessary elements of the willful misconduct defense" under binding case law interpreting Code § 65.2-306(A)(5), that "the claimant's conduct was not simply negligent," and that the evidence "established that the claimant intentionally performed the forbidden act, thereby forfeiting his entitlement to benefits."

In its 1934 decision in <u>Riverside & Dan River Cotton Mills, Inc. v. Thaxton</u>, 161 Va. at 872, 172 S.E. at 264, the Supreme Court of Virginia interpreted the meaning of the word "wilful" from Section 14 of the former Workmens' Compensation Act – which is now Code § 65.2-306 of the current Workers' Compensation Act. The Supreme Court explained that willful in this context means "with deliberate intent." <u>Id.</u> (internal quotation marks and citation omitted). The Supreme Court then held:

> If the employee knows the rule, and yet intentionally does the forbidden thing, he has wilfully failed to obey the rule. *It is not necessary for the employer to show that the employee, having the rule in mind, determined to break it; it is enough to show that, knowing the rule, he intentionally performed the forbidden act.*

Id. (internal quotation marks and citation omitted). The Supreme Court reaffirmed its Thaxton

holding in Griffey v. Clinchfield Coal Corp., 183 Va. 715, 720, 33 S.E.2d 178, 180 (1945), and it

also recited the same holding from Thaxton, essentially word-for-word, on two subsequent

occasions. See Jenkins, 207 Va. at 403, 150 S.E.2d at 123; Mills, 197 Va. at 552, 90 S.E.2d at

127. Thereafter, this Court has applied the same legal test for determining willfulness under

what is currently Code § 65.2-306(A)(5). See, e.g., Spruill, 8 Va. App. at 334, 381 S.E.2d at 361

("The defense may be established without the necessity of proving that the employee, with the

rule in mind, purposefully determined to break it.").

In short, the full commission did not err in assessing whether claimant "intentionally

performed the forbidden act" under the "lockout-tagout" rule that was communicated to

claimant.[6] By focusing on whether claimant "intentionally performed the forbidden act," the

commission simply applied the longstanding legal standard that has been used for decades by the

Supreme Court and by this Court. Furthermore, the Supreme Court has explained, "The adverb

---

[6] The "forbidden act," in the context of the safety rule at issue, has two components:
(1) ascending in the lift without the approval of the Delta Star crane operator; and (2) failing to
"lock out" in order to disable the crane while doing the work of installing the conduit. Code
§ 65.2-306(A)(5) would disqualify claimant from receiving benefits only if both components
were willfully violated.

> "Wilful," as used in the statute, imports something more than a
> mere exercise of the will in doing the act. It imports a wrongful
> intention. An intention to do an act that he knows, or ought to
> know, is wrongful or forbidden by law. It involves the idea of
> premeditation and determination to do the act, though known to be
> forbidden.

King v. Empire Collieries Co., 148 Va. 585, 590, 139 S.E. 478, 479 (1927).
Thus, to prevail, employer would have to establish that the claimant intentionally
ascended in the lift without the Delta Star crane operator's approval *and* that he intentionally
failed to disable the crane before doing so.

- 12 -

'intentionally' is defined as: 'To do something purposely and not accidentally.'[7] Smith v. Commonwealth, 282 Va. 449, 454, 718 S.E.2d 452, 455 (2011) (quoting Black's Law Dictionary 810 (6th ed. 1990)). Applying the plain meaning of this term, the commission could infer from the hearing testimony that claimant "intentionally performed the forbidden act" – and, on appeal, we cannot disturb that finding because it was supported by credible evidence in the record.

"The commission is authorized to draw reasonable inferences from the evidence, and on appeal, we will not disturb reasonable inferences drawn by the commission from the facts proven by the evidence presented." Turf Care, Inc. v. Henson, 51 Va. App. 318, 324, 657 S.E.2d 787, 789-90 (2008); see Watkins, 225 Va. at 101, 300 S.E.2d at 763; see also S&S Elec., Inc. v. Markulik, 61 Va. App. 515, 527, 738 S.E.2d 512, 518 (2013) (noting that, on appeal, the party that prevailed in the commission "benefits from all reasonable inferences from the evidence"). Here, the commission was faced with two possible inferences from the evidence – i.e., either (1) that claimant's violation of the "lockout-tagout" rule was accidental and at most negligent (as claimant argues on appeal); or (2) that claimant "intentionally performed the forbidden act" by purposely failing to disable the bridge crane before working in its path, in violation of the "lockout-tagout" rule that was communicated to him by his supervisors. The commission weighed the evidence relating to the accident that caused claimant's very serious injuries and chose to adopt the second of these possible inferences. We may not second-guess or disturb the full commission's decision to infer that claimant "intentionally performed the forbidden act" because that inference was supported by credible evidence in the record on appeal. See Henson, 51 Va. App. at 324, 657 S.E.2d at 789-90; see also Diaz, 56 Va. App. at 114, 691 S.E.2d at 522.

---

[7] Similarly, the United States Supreme Court has noted that one definition of a willful act is "an act which is intentional, or knowing, or voluntary, *as distinguished from accidental*." is "an act which is intentional, or knowing, or voluntary, *as distinguished from accidental*." Bryan v. United States, 524 U.S. 184, 192 n.12 (1998) (emphasis added) (internal quotation marks and citation omitted). See also id. at 191 (The word "willfully" is sometimes said to be "a word of many meanings" whose construction is often dependent on the context in which it appears.").

Viewing the evidence in the light most favorable to employer, as we must since employer was the prevailing party below, the following evidence in the record supports the full commission's conclusion here. Both Harry Spruce and Dennis Branham plainly instructed claimant that work was not to be performed in the area of the bridge crane unless the crane was locked out and tagged out. Branham testified credibly that a person did not need to have a mechanical background or be a trained electrician to follow the "lockout-tagout" procedure. Indeed, while the "lockout-tagout" rule as described by the testimony below was a multi-step process, it had two essential and simple components: (1) to seek and receive permission from the Delta Star bridge crane operator to perform work in the area of the bridge crane; and (2) to render the bridge crane inoperable by engaging the lock in the disconnect box. The evidence proved that claimant had satisfied both of these essential components of the "lockout-tagout" rule on prior occasions – including a mere three hours before the workplace accident that occurred that same morning on January 19, 2009.[8] However, the evidence established that claimant had not satisfied either of these essential components as he was working in the path of the bridge crane at the time of the workplace accident later that morning. Claimant not only failed to "lock out" the bridge crane – but he also *did not even tell the Delta Star bridge crane operator* that he needed to work near the bridge crane or ask for permission to "lock out" the bridge crane before he got in the scissor lift and ascended in it to do the work he was doing near the bridge crane when he was injured.[9]

---

[8] The testimony of Delta Star employee Clyde Campbell and other witnesses establishes that claimant in the past had appropriately communicated with Delta Star employees and had successfully locked out the bridge crane – including only three hours before his workplace accident. Specifically, Delta Star bridge crane operator David Wright testified that claimant told him at 8:30 a.m. on January 19, 2009 that he needed to work in the area of the bridge crane. Wright then observed claimant lock out the bridge crane using the appropriate disconnect box.

[9] Michael Manning, the Delta Star employee who was operating the bridge crane at the time of claimant's accident, testified that no one told him that the crane was not operational or

- 14 -

Intent "'is a question of fact to be determined from the evidence.'"  Jacobsen v. Jacobsen, 41 Va. App. 582, 590, 586 S.E.2d 896, 899 (2003) (quoting Hall Bldg. Corp. v. Edwards, 142 Va. 209, 215, 128 S.E. 521, 523 (1925)).  Based on the stark difference between claimant's past conduct complying with employer's workplace safety rule and the evidence of claimant's clear disregard of all of the components of this same workplace safety rule directly prior to the accident, the full commission could reasonably infer that claimant deliberately decided not to lock out the bridge crane before beginning work on the lift – an action that was forbidden by employer.  See Mills, 197 Va. at 552, 90 S.E.2d at 127.  While claimant is correct that negligence – even gross negligence – does not bar recovery of workers' compensation benefits,[10] neither the facts of this case nor any prior published decision compelled the commission to find

needed to be locked out.  He also testified that nobody told him about any work that was being done above the machinery in the core cutting room.  Manning explained further that he never actually saw the bridge crane come into contact with claimant's scissor lift.  Clearly, Manning was not even aware that claimant was working in the area until the tragic moment when the bridge crane impacted against claimant's scissor lift.  Moreover, claimant was working very near a disconnect box for the bridge crane at the time of the accident, given the testimony of Manning and Spruce that the scissor lift was located within just a few feet of the disconnect box when they arrived at the scene of the accident.  However, Spruce testified that the bridge crane had not been "locked out," and this testimony was corroborated by the undisputed evidence that a "locked out" bridge crane is inoperable and cannot move.

[10] The record indicates that the concurring commissioner in this case was concerned by language in the Supreme Court's decision in Thaxton suggesting that workers' compensation benefits would have been barred in that case even if there was evidence that the employee failed to follow the employer's workplace safety rule "due to a lapse of memory" on his part.  See Thaxton, 161 Va. at 870, 172 S.E. at 263.  The parties seem to indicate on brief that this portion of the Thaxton opinion was *dicta*.  However, we need not and do not address that point.  A majority of the full commission in this case – whether in the majority opinion or the concurring opinion – found based on the record in this case that claimant here intentionally committed a forbidden act under the employer's workplace safety rule that had been communicated to him.  See id. at 872, 172 S.E. at 264 ("[I]t is enough to show that, knowing the rule, [the employee] intentionally performed the forbidden act."); see also, e.g., Mills, 197 Va. at 552, 90 S.E.2d at 127.

- 15 -

that claimant's actions were negligent here. The cases relied upon by claimant where

negligence, but not willfulness, was proven are distinguishable.[11]

Here, claimant, after having followed the workplace safety rule perfectly just earlier that

morning when he locked out the bridge crane before working in that area – and then unlocked it

when he was finished working there – got into the scissor lift and went up to the area of the

bridge crane and worked there without asking a Delta Star employee if he might do so (and

without then locking out the bridge crane again). Claimant was then tragically and badly injured

when the bridge crane struck the scissor lift and claimant was thrown all the way to the ground

below. The Delta Star employee operating the bridge crane did not even know claimant was

working nearby as he testified he could not see claimant. As tragic and sad as claimant's injuries

are, they could have been avoided if he had followed the steps of the workplace safety rule that

employer had put in place to avoid this sort of outcome – and which claimant had just perfectly

followed only hours earlier that morning.

A majority of the full commission here found that claimant intentionally committed

conduct that was forbidden under the "lockout-tagout" rule that had been communicated to him

---

[11] See, e.g., Williams v. Benedict Coal Corp., 181 Va. 478, 481, 25 S.E.2d 251, 252-53 (1943) (where the employee "was confronted with a situation in the nature of an emergency," where the employee was injured when he acted quickly to prevent the employer's train from being damaged, and where the employer's workplace safety rule was ambiguous); King, 148 Va. at 593, 139 S.E. at 480 ("There was no evidence that [the employee] knew of the existence or requirement of the statute [that he had violated], or that any effort had been made to bring the statute or its provisions to his notice, nor of any rule or instruction of the employer on the subject."); Buzzo, 17 Va. App. at 334, 437 S.E.2d at 210 (finding "it impossible, and illogical, to accuse Buzzo of 'intentionally performing the forbidden act' of speeding in violation of Code § 46.2-861 or his employer's warnings when the evidence is clear that Woolridge, Inc. had not provided him with the means of accurately determining the speed of his vehicle" because the speedometer was broken); Harbin v. Jamestown Village Joint Venture, 16 Va. App. 190, 196-97, 428 S.E.2d 754, 758 (1993) (the employee was struck and killed crossing Route 1 where the "traffic control lights were positioned so that pedestrians could not easily see them," the pedestrian signal was 100 feet from the west side of Route 1," the "light sequences were such that a pedestrian could not traverse Route 1 on one sequence," and the employee "was sixty-six years old and wore eyeglasses").

on a number of occasions – and that, therefore, claimant's conduct was willful for purposes of Code § 65.2-306(A)(5). Given that willfulness in this context is a question of fact, Mills, 197 Va. at 552, 90 S.E.2d at 127, we must defer to the full commission's conclusion that claimant's conduct was willful and "not simply negligent."

### III. CONCLUSION

Viewing the evidence in the light most favorable to employer (as we must, since the employer was the prevailing party below), the record supports the full commission's conclusion that the elements of the employer's affirmative defense under Code § 65.2-306(A)(5) were proven. Accordingly, for the foregoing reasons, we affirm the full commission's decision here.

Affirmed.