COURT OF APPEALS OF VIRGINIA

Present:   Judges Huff, Athey and Friedman
Argued by videoconference

UNPUBLISHED

JAMES YARBROUGH, JR.

                                              MEMORANDUM OPINION* BY
v.         Record No. 0822-21-3                JUDGE GLEN A. HUFF
                                              MARCH 8, 2022

FIREWATER TRANSPORT, LLC AND
  FEDERATED MUTUAL INSURANCE COMPANY


           FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

           John W. Swezey for appellant.

           Jennifer G. Jones (Brian J. Rife; Midkiff, Muncie & Ross, P.C., on
           brief), for appellees.


       James Yarbrough, Jr., ("claimant") appeals a decision of the Workers' Compensation

Commission (the "Commission") denying his claim for temporary disability benefits for an

injury he sustained while working for Firewater Transport, LLC ("Firewater").  The

Commission's decision was based on its finding that claimant did not adequately market his

residual work capacity during a specific time frame when he was partially disabled.  Because the

Commission's decision is supported by credible evidence in the record, this Court affirms.

                                    I.  BACKGROUND

       "Under settled principles of appellate review, [this Court] consider[s] the evidence in the

light most favorable to [Firewater] as the prevailing party before the [C]ommission."  *Layne v.

Crist Elec. Contractor, Inc.*, 64 Va. App. 342, 345 (2015).  Viewed through this lens, the

evidence shows the following:

---

       * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

*Claimant's Background, His Injury, and the First Bit of Procedural History*

Claimant spent the first portion of his career as a trucker. He later earned an emergency medical service certification and worked in that field for roughly ten years. He then returned to trucking and worked as a fuel delivery tanker truck driver for Firewater.

Claimant suffered compensable injuries to his neck, trapezius, right knee, and spine from an accident while working for Firewater on February 20, 2019. By the parties' agreement on January 29, 2020, the Commission entered a stipulated order awarding claimant a lifetime medical award for his injuries, as well as an award for temporary total disability benefits covering February 20, 2019 through November 21, 2019.

Claimant was cleared to perform light-duty-restricted work beginning November 21, 2019, by Dr. Robert Stephenson, a panel-offered physician whom the parties agreed would be claimant's primary treating physician. As such, the stipulated order required that claimant market his residual skills from that date forward so long as he remained partially, but not totally, disabled. Whether claimant was entitled to additional disability benefits while partially disabled was contingent on the efforts expended by claimant in marketing his residual work capacity.

Claimant eventually found new employment as a classroom instructor with Elite Driving School in Eden, North Carolina, beginning January 11, 2021, but was without employment prior to that time starting November 22, 2019. For part of that period of unemployment—specifically, from November 22, 2019 through March 4, 2020, and from April 16, 2020 through November 10, 2020[1]—the parties disagreed as to whether claimant's inability to find employment was due

---

[1] The deputy commissioner found that claimant was entitled to disability benefits for March 5, 2020 through April 15, 2020, because he was totally disabled for that brief period. That finding is not the subject of any dispute in this appeal. Additionally, the parties stipulated that Firewater paid claimant temporary total disability benefits for November 11, 2020 through January 10, 2021. So the only disputed time frame in this appeal is between November 22, 2019 and March 4, 2020, and between April 16, 2020 and November 10, 2020. This opinion will use the shorthand "the disputed period" when referencing those time frames.

to a lack of reasonable effort in marketing his residual work capacity. Because claimant felt he adequately marketed his residual work capacity during the disputed period, he filed a claim for disability benefits for that period on June 24, 2020.

*Claimant's Work Restrictions and Marketing Efforts*

A hearing on claimant's request for disability benefits took place before the deputy commissioner on February 3, 2021. The evidence presented at the hearing included, in relevant part: (1) claimant's testimony; (2) a transcript of claimant's testimony from a deposition that occurred on January 8, 2021; (3) medical notes from Dr. Stephenson regarding claimant's work capacity; and (4) copies of applications claimant submitted to various employers during the disputed period.

Dr. Stephenson wrote a light-duty work note for claimant beginning November 21, 2019. At that point, Dr. Stephenson opined claimant could return to work with the following limitations: "No lifting more than 10lbs. [N]o climbing. No driving. Alternate sit/stand/walk as needed during work day." Between November 21, 2019 and February 9, 2020, claimant applied for seventeen jobs on Indeed.com,[2] sixteen of which were for commercial driver's licensed ("CDL") driving jobs and one of which was for a general sales management position with Harley Davidson. He also submitted in-person applications at Walmart, Rural King, and Tractor Supply, although it is not clear from the record what specific positions he applied for at

_____

[2] Indeed.com is an internet site that serves as a middleman between employers and prospective employees. Employers can post job listings on the site while prospective employees can peruse those listings and apply as they see fit. *How Indeed Works*, Indeed, https://www.indeed.com/hire/how-indeed-works (last visited Mar. 4, 2022). Prospective employees can also use the site's algorithms to narrow their job search for listings that coincide with their individual backgrounds and skill sets. *How Does Indeed Work? Using Indeed For Your Job Search*, Indeed, https://www.indeed.com/career-advice/finding-a-job/how-does-indeed-work (last visited Mar. 4, 2022). After a prospective employee submits an application, Indeed will notify employers of the application and the employer can then choose to view the application and follow up with the applicant. *How Indeed Works*, https://www.indeed.com/hire/how-indeed-works (last visited Mar. 4, 2022).

those places.  He obtained an interview with either Walmart or Rural King (the record is not clear on which one) but was turned down when the employer learned of claimant's medical restrictions.

Dr. Stephenson updated his light-duty work recommendations for claimant beginning February 10, 2020.  In that update, he stated claimant could work within these modified limitations:  "Modified duty, alternate sit/stand/walk as needed.  No lifting greater than 5 pounds.  No climbing.  No truck driving."  Between February 10, 2020 and March 4, 2020, claimant applied for eleven jobs on Indeed, ten of which were for CDL driving jobs and one of which was for a camera car driver position with Associates Asset Recovery.

Dr. Stephenson wrote a third light-duty work note beginning April 16, 2020.  There, Dr. Stephenson did not place specific limitations on claimant's work capacity as he did in past notes.  Instead, Dr. Stephenson simply stated that claimant was fit to "continue on light duty status for work."  Between April 16, 2020 and July 5, 2020, claimant did not apply for any jobs.

Dr. Stephenson issued the final light-duty work note beginning July 6, 2020.  In that note, he placed these restrictions on claimant's work capacity:  "No lifting more than 15lbs; ground-level work only.  Avoid repetitive kneeling or squatting.  No large truck driving."

Claimant applied to sixty-seven jobs on Indeed between July 6, 2020 and November 10, 2020.  Forty-five of those were for truck driving jobs, while the others were for positions in different fields, including sales work, management, a permit clerkship, a pest control technician position, customer service work, an auto technician position, and various security positions.

*The Remaining Procedural History*

After reviewing the evidence, the deputy commissioner denied claimant's request for disability benefits covering the disputed period.  The deputy commissioner found that claimant did not make a reasonable effort to market his residual work capacity during the disputed period,

- 4 -

relying solely on the fact that claimant's application output averaged roughly two applications per week during the period.

Claimant sought review with the full Commission. Following its review of the evidence presented to the deputy commissioner, the Commission unanimously affirmed. In doing so, it focused on both the quantity of claimant's applications and the quality of his overall efforts:

> Here, we analyze the claimant's marketing . . . and find it lacking during the [disputed period]. Initially, the claimant was restricted from driving. Later, he was prohibited from driving large trucks. His applications during both periods for so many . . . truck driving jobs did not demonstrate a good faith effort to obtain light duty [work]. He offered no explanation for the low number of actual applications or documentation of the leads sent by Indeed. He did not explain his failure to register with the [Virginia Employment Commission]. Considering all the circumstances, the Deputy Commissioner did not err in denying his claim.

This appeal followed.

## II. STANDARD OF REVIEW

The issue in this appeal is whether the Commission erred in denying claimant's application for temporary total disability benefits for the disputed period based on its finding that claimant did not make reasonable efforts to market his residual work capacity. Whether a claimant made reasonable efforts to market himself is a question that "falls within the Commission's fact-finding [function], and if the Commission's factual conclusion on that question is supported by credible evidence, it will not be disturbed on appeal." *Ford Motor Co. v. Favinger*, 275 Va. 83, 88 (2008) (citing *Wall St. Deli, Inc. v. O'Brien*, 32 Va. App. 217, 220-21 (2000)). In determining whether credible evidence exists, this Court will not "retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." *Wagner Enterprises, Inc. v. Brooks*, 12 Va. App. 890, 894 (1991). Moreover, "[t]he fact that there is contrary evidence in the record is of no consequence if there is credible evidence to support the [C]ommission's finding." *Id.*

III. ANALYSIS

Claimant argues the Commission erred in finding that he failed to adequately market his residual work capacity. He relies on two facts in support of that argument: (1) he submitted over ninety job applications during the disputed period, and (2) he used online technology to conduct his job search when in-person efforts were difficult during the COVID-19 pandemic.[3]

"Pursuant to Code § 65.2-500(A), an employer is required to pay an employee who is totally incapacitated from work due to a compensable injury 'a weekly compensation' calculated in the manner set out in the statute." *Hamilton v. Pro-Football, Inc.*, 69 Va. App. 718, 727 (2019). But when a claimant is not totally physically disabled—as was the case during the disputed period here—the claimant must prove as a precondition of receiving continued disability benefits "that he [has] made a reasonable effort to procure suitable work but [is] unable to market his remaining work capacity." *Favinger*, 275 Va. at 89 (alterations in original) (quoting *Wash. Metro. Area Transit Auto. v. Harrison*, 228 Va. 598, 601 (1985)).

Although there are "no fixed guidelines for determining what constitutes a 'reasonable effort' by an employee to market residual work capacity," *Great Atl. & Pac. Tea Co. v. Bateman*, 4 Va. App. 459, 467 (1987), the Commission considers the following factors:

> (1) the nature and extent of employee's disability; (2) the employee's training, age, experience, and education; (3) the nature and extent of employee's job search; (4) the employee's intent in conducting his job search; (5) the availability of jobs in the area

---

[3] Claimant also notes that he received a number of "hits" from Indeed during the disputed period, which were notifications of job openings that coincided with the experience he listed on his resume. He claims he spent considerable time filtering out hits that conflicted with the work limitations placed on him by Dr. Stephenson, a fact that in his view shows the reasonableness of his job search efforts. Firewater urges this Court not to consider any argument about these hits because claimant produced no evidence of them in the proceedings below. But this Court need not go as far as Firewater wants it to there, because even assuming the hits were appropriately presented for this Court's consideration, all they would amount to is evidence that conflicted with the Commission's conclusion. So, like the rest of the evidence claimant puts forward that supports his position, those hits would be "of no consequence" so long as this Court can identify credible evidence that supported the Commission's judgment. *Wagner*, 12 Va. App. at 894.

suitable for the employee, considering his disability; and (6) any other matter affecting employee's capacity to find suitable employment,

*National Linen Service v. McGuinn*, 8 Va. App. 267, 272 (1989). "In sum, an employee 'must present some evidence that he [has] engaged in a good faith effort to obtain work within the tolerance of his physical condition and has failed to find a job, either due to his injury or because no such work was available in the community.'" *Favinger*, 275 Va. at 90 (quoting *McGuinn*, 8 Va. App. at 271).

Here, claimant's arguments fail because credible evidence supports the Commission's conclusion that he did not make reasonable efforts to market his residual work capacity. The vast majority of the applications claimant submitted were for driving jobs that fell outside the medical restrictions Dr. Stephenson imposed on him. There were several months during the disputed period where claimant failed to apply to any jobs at all. And as the Commission pointed out, claimant never registered with the Virginia Employment Commission to aid his job search—a factor that, although not dispositive in itself, was one the Commission was entitled to rely on in combination with all the circumstances of the case. *See Herbert Bros., Inc. v. Jenkins*, 14 Va. App. 715, 717-18 (1992). Given this credible evidence, this Court leaves the Commission's judgment undisturbed. *See Favinger*, 275 Va. at 88.

## IV. CONCLUSION

For the foregoing reasons, this Court affirms the Commission's denial of claimant's request for disability benefits during the disputed period.

*Affirmed*.